## The McLean County Coal Company

*v.*

## John Lennon.

Measure of damages—*trover for taking coal in mine.* In trover for coal taken from the land of another and converted, the true measure of damages is the value of the coal at the mouth of the pit or shaft, less the cost of conveying it there from the place where dug or mined, allowing nothing for the digging, or the labor in separating the stone, sulphur, slate and earth from the coal first

36—91 Ill.

broken loose, or in breaking up the large masses, and in brushing the road. The tort-feasor will be allowed nothing for the mining or any other act necessary to the production of the coal as an article of commerce.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN BURNS, Judge, presiding.

Messrs. STEVENSON & EWING, for the appellant.

Messrs. TIPTON & POLLOCK, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was trover, by John Lennon, the appellee, against appellant, to recover damages for coals taken by it from the land of appellee and converted to its own use, without his consent. The case was tried before a jury, and a verdict was returned in favor of appellee for $259. Judgment was rendered on the verdict, and this appeal was taken.

The principal question involved in the suit is as to the correct rule for the measure of appellee's damages for the coals taken by appellant.

*Robertson* v. *Jones et al.* 71 Ill. 405, was trespass for taking coal from a mine. We there said, the plaintiff "has the right to recover the value of the coal after it is dug in the bank; or, he could recover the value of the coal at the mouth of the pit, less the cost of conveying it, after dug, from the mine to the mouth of the pit. This rule is founded in justice, and seems to be sustained by the authorities."

We afterwards, in the case of *McLean County Coal Company* v. *Long*, 81 Ill. 359, applied the same rule for the assessment of damages in an action of trover; holding that in either form of action the plaintiff was entitled to compensation only for the damage he had actually sustained, unless it was a case of trespass calling for vindictive damages. We said, "for the expense and trouble of separating the coal from its kindred layers and making it a chattel, the defendant can not claim to be reimbursed; but the coal had no value as a salable article

without being taken from the pit, and any person purchasing the coal in the pit would have deducted from the price the cost of bringing it to the pit's mouth."

During the trial the circuit court had used this language: "I understand the measure of damages is, the value of the coal at the time of the conversion. I think the measure of damages is, the value of the coal at the mouth of the shaft, less the expense of drawing it up." We quoted this language, and suggested that if the court had adhered in the instructions to the rule thus announced, it would have conformed to our views of the law and to former decisions of this and other courts. We said, "the court should have told the jury the plaintiff could recover as damages the value of the coal at the mouth of the shaft, less the cost of conveying it from the place where it is dug to the mouth of the shaft. This is, in effect, saying he can recover the value of the coal when it first became a chattel by being severed from the mass and under their control." We referred to the case of *Sturges et al.* v. *Keith,* 57 Ill. 451, and announced the doctrine to be that the damages are to be estimated at the value when the chattel is converted.

In *Illinois and St. Louis Railroad & Coal Company* v. *Ogle,* 82 Ill. 627, which was an action of trespass, the court had instructed the jury to allow the plaintiff the value of the coal taken, estimated at the pit mouth, less the cost of carrying it from where it was dug to the pit mouth, allowing the defendant nothing for the digging; and the instruction was held to be correct, and the judgment was affirmed. We there quoted with approval this language of Lord Denman, in *Morgan* v. *Powell,* 43 Eng. Com. L. 734: "The defendant had no right to be reimbursed for his own unlawful act in procuring the coal, nor can he, properly speaking, bring any charge against the plaintiff for labor expended upon it. But it could have no value as a salable article without being taken from the pit. Any one purchasing it there, would, as of course, have deducted from the price the cost of bringing it to the pit's mouth." We again stated the rule for the assessment of damages to be, the

value of the coal at the mouth of the pit, after deducting the cost of removing it from the place where mined to the pit's mouth.

The instructions of the court given in the case now under consideration are in conformity with the rule announced by us in the cases to which we have referred. The several instructions given inform the jury, in substance, that they should allow the plaintiff the value of the coal at the mouth of the shaft, less the cost of conveying it from where it was dug in the pit to the mouth of the shaft.

It seems the coal in controversy was mined by digging out the clay from under it, when the weight of the top would break it off. This left the coal in large masses, mixed with sulphur, slate, stone and clay. These masses had to be broken up and the sulphur, slate, stone and clay removed before the coal was in a condition to be put on the cars and run out to the shaft.

As we understand the claim of appellant, it is that the expense of breaking up these masses and removing the extraneous substances, and the time and labor of the miner in brushing his road, should all be deducted from the value of the coal at the mouth of the shaft.

The evidence shows the brushing of the road was necessary in order to reach the coal and break it loose, and, on principle, the wrong-doer should not be allowed compensation for the labor expended in converting the property taken into a chattel.

There was no conversion to the use of the appellant of the aggregate mass broken off by undermining, but a conversion of the coal after it was broken up and separated from the rock, slate, sulphur and clay, after it existed as coal, as a chattel distinct and separate from the various other substances with which it was primarily imbedded. This separation was a necessary part of the operation of mining it, and of its production as an article fit for commerce and use. Until such separation it did not become the chattel called coals. It was the coals, and not a conglomerate mass of coal, slate, sulphur, clay and other substances, that were taken and converted by appellant and lost

to appellee.    As shown by the evidence, this slate, sulphur,
stone and clay were left there.    The appellant is not entitled
to be reimbursed for the expense and trouble of detaching the
coals from the surrounding substances.    It is the value of the
article when it first exists as coals that forms the basis of the
measure of damages.    This severance of the several substances
was part and parcel of the unlawful act of procuring the coal,
and was part of the labor expended in producing the chattel,
and for such unlawful act and labor no charge can be made.

The rule as stated in *Robertson* v. *Jones et al.* that the plain-
tiff can recover " the value of the coal at the mouth of the pit,
less the cost of conveying it, after dug, from the mine to the
mouth of the pit; " the rule as stated in *McLean County Coal
Company* v. *Long*, that the plaintiff can recover as damages
" the value of the coal at the mouth of the shaft, less the cost
of conveying it from the place where it is dug to the mouth
of the shaft; " and the instruction that was sustained in *Illi-
nois and St. Louis Railroad and Coal Company* v. *Ogle*, to the
effect that the value of the coal taken, estimated at the pit
mouth, less the cost of carrying it from where it was dug to
the pit mouth, allowing nothing for the digging, was the
measure of damages, would all have to be disregarded in order
to hold, as is here contended for, that the labor expended in
separating the stone, slate, sulphur and earth from the coal,
after the mass containing the coal first broke loose upon the
removal of the underlying clay, should be deducted from the
value of the coal at the mouth of the pit.    We are unable to see
how such severance of other substances from the coal forms any
part of the conveyance, carriage or transportation of the coal
from the place where dug to the mouth of the pit; and by
the rule as heretofore announced, the cost of such conveyance,
and that only, can be deducted from the value at the mouth
of the shaft.

The severance spoken of in the *Long case* and in other cases
must be understood as including all the acts done and labor
used in order to sever and separate the coal from the mass of

other material and render it that chattel and article of commerce known as coal, for not otherwise will the language used be consonant with the rule enunciated in that and the other cases. When detached from the clay, stone, slate and sulphur, and after all the labor has been bestowed upon it that is required to make it the coal of commerce, then, and not till then, is it to be considered as fully severed from the mass and under the control of the miner; and then, and not till then, is the conversion complete. Then the value attaches which becomes the basis of the measure of damages, and to ascertain that value, we deduct from the value at the mouth of the pit the cost of transportation from the place where dug to the mouth of the pit. This affords a simple and certain rule for the ascertainment of the damages, and is consistent with former decisions of the court, and avoids giving compensation to the trespasser and tort-feasor for his labor unlawfully expended in producing the coal.

The same rule is held in the English cases which have been heretofore cited and approved by us. *Martin* v. *Porter,* 5 Mees. & Wels. 302; *Morgan* v. *Powell,* 43 Eng. Com. L. 739; *Wild et al.* v. *Holt,* 9 Mees. & Wels. 672. In these cases, as in former decisions of this court, expressions such as "the value of the coal as soon as it exists as a chattel," and the like, are used; but such expressions are uniformly found in immediate connection with some such statement as that in the leading case of *Martin* v. *Porter,* where it is said "which value would be the sale price at the pit's mouth, after deducting the expense of carrying the coals from the place in the mine where they were got, to the pit's mouth." Thus showing that the time fixed for the valuation of the coal is after all labor on it has been performed, and it is severed from the other layers and substances, and first exists as the chattel to which the labor bestowed was intended to reduce it. None of these cases indicate an intention to allow compensation for the labor expended in procuring the coal.

With the law thus understood, the evidence in the record

is amply sufficient to sustain the finding of the jury°and the amount of damages assessed.

There was no error in refusing the instruction asked by appellant; the latter portion of it was, in view of the evidence introduced by appellant as to the general expenses of running the mine and conducting the business of the company, calculated to mislead the jury.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*