THE BLAEN AVON COAL COMPANY and others *vs.*
GEORGE McCULLOH and E. MELVIN McCULLOH,
Administrators of ROBERT E. McCULLOH.

*Evidence in an action of trespass—Admissibility of Will not
Located on plats—Power of Sale not susceptible of location—
Proof of granting of Letters testamentary—Practice in
Orphans' Court—Possessory title Sufficient to support action
of Trespass q. c. f.—Liability of person Trespassing through
ignorance as to the Limits of his possession—Joint liability
of Principal and agent—Subsequent ratification of act of
the agent—Liability of intermediate manager—General prin-
ciples of Liability for acts of the Agent as applying to corpo-
rations—Measure of damages in an action of Trespass for
Mining and carrying away coal—Action of Court below not
Reviewable on Appeal—Irrelevant valuation of Coal mined
and Taken off and sold—Question disallowed—Proper ques-
tion—Improper estimate—Element of damages.*

In an action of trespass *quare clausum fregit*, the plaintiff gave in
evidence a survey and location of that part of the lands of B. J,
in A. County, held by him at his death, which included the *locus*
of the trespass; and offered in evidence the will of B. J., contain-
ing a power of sale of *all his lands* in A. county. On objection to
this will on the ground that it "was not located upon the plats,"
it was HELD:

That the objection was not well taken. 1st. Because, as the testator
had directed *all* his lands in A. County to be sold, any part thereof
less than the whole was necessarily comprehended in the direction.
2nd. Because the power to sell could not be laid down or repre-
sented in a "location," which is a description of natural objects.

The probate of a will, wherein were named as executors the persons
who acted as such; the filing and approval of their bond, and the
exhibition to and passage by the Court of their executors' accounts,
in one of which is the specific allowance of the fee paid to the
register for issuing the letters testamentary, is abundant proof that
letters testamentary were granted to the executors.

Blaen Avon Coal Co., *et al. vs.* McCulloh.

Whilst the practice of recording the issue of letters in the minutes. of proceedings of the Orphans' Court, is to be approved, the absence of such a practice when the will of a testator was admitted to probate in the year 1811, is no sufficient reason to impeach the action of his executors.

Apart from the evidence in the above action relating to the plaintiff's. paper title, the uncontroverted proof showed that the plaintiff, and those under whom he held, were in full and peaceable possession of the land as the claimants thereof for more than thirty years. prior to the institution of his suit. HELD:

That this was a sufficient possession, the defendants setting up no claim whatever to the land, and trespass *q. c. f.* being a possessory action, to enable the plaintiff to sue.

A trespasser, though misled by a *bona fide* mistake as to his title, or who has taken every precaution to keep within his own lines,. cannot escape liability for the injury done, being bound in law to know the limits of his possessions.

The law is established that in the case of an agent or steward committing a tort while acting within the scope of his employment, he and his employer may be sued separately or jointly at the election of the party injured. Nor is it material to the latter's right to sue, in what proportions. if any, they share the benefits of the wrongful act.

If the agent exceed his authority, a subsequent ratification or adoption of his act by his principal is equivalent to a precedent command.

The cases in which the intermediate manager or head employé has been held not liable for trespasses of workmen under him, and in which recourse can be had only to the actual wrong-doer, or to the master, on the principle of *respondeat superior*, are distinguishable from those where the tort is in consequence of the command or neglect of the general superintendent.

These general principles of liability as between master and servant, principal and agent, apply as well to corporations as to private individuals.

The general rule in actions of trespass for mining and carrying away coal, is, that the plaintiff is entitled, independently of circumstances of aggravation, to recover the value of the coal immediately upon its conversion into a chattel by severance from the freehold without. abatement of the cost of severance.

Blaen Avon Coal Co., *et al. vs.* McCulloh.

As the fact to be arrived at is the worth of the coal just after its severance and before the removal is begun, it does not vary the rule of compensation whether its value at that time is ascertained by what it would sell for when brought to the surface, and then deducting the mere cost of bringing it there, or by estimating its worth before it was removed, where it has been taken from the pit and sold.

The action of the Court below in overruling an objection to a question propounded to a witness, will not be reviewed on appeal, if the record does not disclose what answer, if any, was made by the witness.

It is no defence to an action for mining and carrying coal from the land of the plaintiff, that the cost to the plaintiff of opening and equipping a mine on his own land, considering the small number of acres in his tract, would be so great as to render his coal valueless; nor is such a mode of valuation relevant where in fact the coal mined was actually taken off and sold.

The Court below refused to allow the defendants to put the following question: " In removing the plaintiff's coal from the place of severance to the mouth of defendant's mine, what would be a fair allowance, for the use of the defendant company's tramway, mining galleries and cars?" HELD:

1st. That the ruling of the Court below was clearly correct.

2nd. That the question as to what deduction would have been reasonable and fair for the actual expense of loading and hauling the coal from where it was dug, to the surface, would have been proper, had testimony been offered to show its saleable value at that point.

It was also HELD:

1st. That the defendants had no right to introduce, as bearing upon the value of the severed coal, an estimate of the established equipments and facilities of the defendant company which were erected for its own operations.

2nd. That exclusive of the coal carried away, the plaintiff was entitled to damages for the injury done in impairing the worth of, and making more difficult to mine, the coal that was left, through destructive and wasteful modes of excavation.

APPEAL from the Circuit Court for Allegany County.

Blaen Avon Coal Co., *et al. vs.* McCulloh.

The case is stated in the opinion of the Court.

*First* and *Second Exceptions.*—Sufficiently stated in the opinion of the Court.

*Third Exception.*—The plaintiff then offered to prove by James Aspinwall the worth per ton of severing coal from its native bed, including the worth or cost of propping the mine, for the purpose of enabling the miners to proceed with said severance, to which the defendants objected, and upon the witness stating that propping the mine was necessary before coal could be severed, the Court (PEARRE, and MOTTER, J.,) overruled the objection and permitted said evidence of the worth of severing coal and propping the mine, to be given to the jury. To this ruling of the Court the defendants excepted.

*Fourth Exception.*—The defendants upon cross-examination of said last named witness, asked him what was the value of the plaintiff's coal, when first severed from its native bed, excluding from consideration the facilities of the defendant, the Blaen Avon Company, for running said coal from the place of severance to a place of shipment or market. To this question the plaintiff objected, and the Court sustained the objection, and refused to permit said question to be asked. The defendants excepted.

*Fifth Exception.*—The defendants then asked the witness, Stewart, what was the value of the plaintiff's coal, as soon as it was severed from the freehold, or its native bed, calculated on the base of its sale value, at the surface, deducting the expense of carrying it there, and not taking into consideration the Blaen Avon Coal Company's facilities for removing the coal, its tramways, its cars and equipment. The plaintiff objected to this question, and the Court sustained the objection. The defendants excepted.

*Sixth Exception.*—The defendants asked the same witness, what was the value of the plaintiff's coal, as soon as

it was severed from the freehold, or its native bed, calculated on the basis of its sale at the nearest or best market, deducting the expense of carrying it there from the place of severance, and not taking into consideration the Blaen Avon Company's facilities for removing the same, its tramway, cars and equipment. To this question the plaintiff objected, and the Court sustained the objection. The defendants excepted.

*Seventh Exception.*—The witness, Stewart, then proved that the coal on the plaintiff's land could be removed from the place where it was severed through the plaintiff's own land, without passing through the defendant's galleries, or over its tram-ways, if the plaintiff would open his mine on his own land. That it would cost $12,000 or $14,000 to open the plaintiff's mine, and equip it for removing all the coal to the mouth of the mine. And the defendants then asked the witness " if the improvement above spoken of were made, how much per ton would it cost the plaintiff to remove the coal severed by the defendants, from the place of severance to the mouth of the mine, taking into consideration the quantity of coal in the plaintiff's land ? To this question the plaintiff objected, and the objection was sustained by the Court. The defendants excepted.

*Eighth Exception.*—The defendants asked the said witness : " In removing the plaintiff's coal from the place of severance to the mouth of defendant's mine, what would be a fair allowance in the cost of removal, for the use of the defendant company's tram-way, mine galleries, and cars ? To this question the plaintiff objected, and the Court sustained the objection. The defendants excepted.

*Ninth Exception.*—The plaintiff then offered the six following prayers:

1. That if the jury find from the evidence in the cause, that the plaintiff owned and was possessed of the parts of the tracts of land called "Policy," "Addition to Policy," and "The Resurvey on Policy," as located by him as his

claims and pretensions, (if the jury find such location to be correct), and that the Blaen Avon Coal Company owned and operated a coal mine immediately contiguous thereto, and if the jury further find that Archibald Stewart was for a long time prior to and until the bringing of this suit, the mining boss of said company, and as such, had control of the mining operations carried on in said mine, and of the miners employed by said company therein, and that during said time, the miners of said company by the direction and orders of said Stewart, mined over the division line between the lands of said company, and those of the plaintiff above named, of and into the said lands of the plaintiff, at the places located upon the plats in this cause, and thereupon, at said places, dug and mined, and carried away coal from off, and out of the said lands of the plaintiff, under and by the direction and orders of said Stewart, and that while said mining was being so done upon said lands of the plaintiff, (if the jury so find,) said Stewart frequently entered upon said lands of the plaintiff, and gave orders and directions to the said miners in and about the mining of the coal thereon as aforesaid, then the said Stewart and the Blaen Avon Coal Company are jointly responsible for such damages as the jury may believe from the evidence, the plaintiff has sustained by said mining and said excavations upon the plaintiff's said lands.

2. That if the jury believe from the evidence in the cause, that the defendants dug and mined coal at the places located on the plats in this cause, from that part of the tracts of land called "Policy," "Addition to Policy," and the "Resurvey on Policy," included within the metes and bounds, courses and distances of deed from John Johns to R. C. McCulloh, as located on the plats; if they find said location correct, and made excavations thereunder, and removed the coal so mined, and thereby injured the coal left remaining as pillars, or by bad mining or otherwise,

Blaen Avon Coal Co., *et al. vs.* McCulloh.

rendered it difficult or impossible for the plaintiff to get out such pillars or remaining coal, or rendered it of less value to him, then the plaintiff is entitled to recover such sum per ton for such coal as cannot be removed, as they shall find from the evidence it was worth in its native bed, and such damages for so much of such coal as can be removed, but with increased expense, as they may find such coal to be diminished in value.

3. That if the jury believe from the evidence that the defendants mined and excavated at the places located on the plats in the cause, under that part of the tracts of land, called "Policy," "Addition to Policy," and the "Resurvey on Policy," included within the metes and bounds, courses and distances, of deed from John Johns to R. C. McCulloh, as located on said plats, if they find said location correct, and thereby rendered it more difficult and expensive for the plaintiff to obtain access to the coal under said lands, and depreciated the value of said remaining coal, then the jury may allow the plaintiff such damages as they may find the plaintiff has sustained from the depreciation of said land, and the increased difficulty and expense of obtaining access to the coal remaining therein.

4. That if the jury believe from the evidence that the defendants mined out coal at the places located on said plats, under that part of the tracts of land, called "Policy," "Addition to Policy," and the "Resurvey on Policy," included within the metes and bounds, courses and distances, of the deed from John Johns to R. C. McCulloh, as located on said plats, if they find said locations are correct, then the plaintiff is entitled to recover such sum per ton as the jury may find said coal, so mined, was worth, when first severed from its native bed, and before it was put upon the mine cars, without deducting the expense of severing said coal from its native bed.

5. That if the jury believe from the evidence in the cause, that the plaintiff owned and was possessed of the

parts of the tracts, called "Policy," "Addition to Policy," and the "Resurvey on Policy," as located by him as his claims and pretensions, (if the jury find such location to be correct,) and that upon plaintiff's said lands there was, and is, a vein or seam of iron-ore, extending over a portion of plaintiff's said lands, at the place located on the plats called "iron-ore diggings," and throughout a portion of plaintiff's land, westward therefrom; and if they further find, that the defendants mined into the plaintiff's said land, and made excavations therein, at the places located on the plats, and under said iron-ore, and thereby injured said iron-ore, or by said mining and excavations, (if the jury find such,) rendered it difficult, more expensive or impossible to get out said ore, or some part thereof, or rendered said ore of less value to the plaintiff, then the plaintiff is entitled to recover such sum per ton for such ore as cannot be removed, (if any,) as they shall find from the evidence it was worth in its native bed, and such damage for so much of such ore as can be removed, but with increased expense, as they may find such ore to be diminished in value.

6. That if the jury find from the evidence in the cause that the defendants, at the time of mining out the coal and excavating under said land, knew that said lands were not the lands of the defendants, or either of them, then the jury are not limited to the actual amount of damage committed, (if they shall find any has been committed,) but may find such further damage as the facts and circumstances accompanying such mining of coal and excavating under said land may warrant.

And the defendants offered the five following prayers:

The defendant, Archibald Stewart, prayed the Court to grant the following instructions:

1. That if the jury find from the evidence that the defendant, the Blaen Avon Coal Company, was operating its mine upon its lands adjoining the plaintiff's land, and that it

worked over the bounds of its land into that of the plaintiff, and mined and carried away coal therefrom at the several places shown on the plats, and that the defendant, Stewart, was the mine boss of the said company, having general charge of its employés engaged in said mining, that then the said Stewart is not liable under the declaration in this case for any of the trespasses committed upon the lands of the plaintiff by said mining, except such as they may find from the evidence that he committed in his own person, or by orders or directions given by him to said employés, or any of them under his charge, and that his general orders and directions to said employés to mine the coal in one place or another, on the said company's land, will not make him liable in this action for any trespasses which the jury may find, that such subordinate employés, or any of them, may have committed upon the plaintiff's land, by extending the workings of the mine from the defendant company's land into the plaintiff's land.

2. That if the jury find from the evidence, that when the Blaen Avon Coal Company commenced opening its mines, it employed O. D. Robbins, to ascertain and locate on the working plat of its mine the *outcrop* of its coal, and that said Robbins was an efficient and capable mining engineer, of great experience in all matters pertaining to the lay and mining of coal in the Cumberland Coal region, and that he made the mine plat offered in evidence, and laid down carefully and skilfully, according to the only method known to such engineers, the outcrop shown on said mining plat, and designated on the plats in this cause by the line, marked " O. D. Robbins' outcrop," and that he gave the said plat to said company as a correct plat, by which it might safely work its mine to the outcrop of said coal, without reaching the dividing line between its land and that of the plaintiff, and that said company in good faith, relying upon the correctness of said plat, gave the

same to its boss miner, the defendant, Stewart, with in-
structions to work the mine, according to said plat, to the
outcrop of the coal, where the same was laid down, within
the bounds of said company's land, and to the dividing
line where the outcrop was shown by said plat to be on
the plaintiff's land, and that said Stewart, in working said
mine, obeyed said instructions, and worked the same
toward said outcrop, as laid down on said company's land,
honestly believing that the same would be reached before
the plaintiff's land could be reached, and that said out-
crop would be the limit of mining in that direction, and
said mining be necessarily stopped before the dividing line
on that part of that property could be reached, and that
according to the universal experience of mining engineers,
and others practically skilled as to the formation and lay of
the coal in said region, and the working of mines therein,
said outcrop, as laid down by said Robbins, would have
been correct, but for an unusual, irregular, and heretofore
unknown formation and lay of the coal-vein, which existed
between the outcrop laid down by Robbins and the divid-
ing line, and beyond, into the plaintiff's land, (if the jury,
find that such lay and formation of coal did exist,) and
that in working said mine toward said outcrop, honestly
believing the same would be reached before the plaintiff's
line, the said Stewart ordered or directed some of the em-
ployés of the company to mine coal on the plaintiff's
land, at the places testified to by the witnesses in the cause,
believing that said places were on said company's land,
and within the outcrop, as laid down by Robbins, then the
measure of damages to be awarded by the jury, against
the said Stewart for the trespasses aforesaid, of mining
coal at said places on the plaintiff's land, by his orders or
directions, is not the value of the coal so mined, but such
damage as the jury may find from the evidence said min-
ing did to said coal so mined, and to the remaining coal
in the plaintiff's land, and to said land in any other man-

ner, as the necessary or natural result of the mining of said coal.

3. That if the jury should find from the evidence, that he committed any trespasses upon the plaintiff's land, in the manner stated in the first prayer, that the jury can only assess damages against him, for such trespasses as they may find he was guilty of as aforesaid, and that under the pleading and evidence in the cause, they cannot charge him with the value of any coal mined on the plaintiff's land, by his orders or directions.

The defendants asked the following instructions:

4. That under the declaration in this case, the plaintiff cannot recover for any of the alleged trespasses, except such as the jury may find were jointly committed by both of said defendants.

5. That the plaintiff is not entitled to recover in this action for the conversion of any coal which the jury may find was mined in and removed from the plaintiff's land, because there is no evidence that the defendant, Stewart, converted said coal, jointly with the other defendant, or otherwise.

The Court granted the plaintiff's prayers, and rejected the defendants' prayers, as offered; but granted the defendants' first and fourth prayers, with amendments made by the Court, as follows:

Addition to first prayer of defendant:   But if the jury find, that at the time the trespasses were committed, the said Stewart was the boss miner of said company, and that it was part of his duty as such, to direct all the mining operations of said company, that is, to show the miners where to work, and how to work; and if they further find, that the said Stewart performed such duty, and that the miners, under the control of said Stewart, mined coal from under the plaintiff's land, then the said Stewart, as well as said company, is responsible therefor, although said Stewart may not have known that the mining was done on the plaintiff's land.

Addition to fourth prayer of defendants: But may recover against either, if they find one guilty, and not the other.

The defendants excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Ferdinand Williams,* and *William Walsh,* for the appellants.

*Benjamin A. Richmond,* and *William Brace,* for the appellee.

RITCHIE, J., delivered the opinion of the Court.

The judgment in this case was against the Blaen Avon Coal Company and Archibald Stewart, its mining boss, for entering the appellee's close, and mining and taking away several thousand tons of coal, and for so conducting their operations as to greatly impair the value of the residue of his coal bed.

In the course of proving his record title to the land, the plaintiff offered in evidence the will of Baker Johnson, deceased, the original grantee of the State, which contained the following clause:

"It is my will and desire, and I do hereby direct, that my executors shall sell and convey in such manner and on such terms as they shall think beneficial, all the lands to which I am in any manner entitled, lying and being in Allegany County, in the State of Maryland."

The defendants objected to the admissibility of the will, "because the same was not located upon the plats;" and the overruling of this objection is the ground of their first exception.

We do not think the objection well taken. As the testator had directed *all* his lands in Allegany County to be

sold, any part thereof, less than the whole, was necessarily comprehended in the direction. Nor can we perceive how the power to sell could be laid down, or represented in a "location," which is descriptive of natural objects. There was in evidence a survey and location of that parcel of the lands of Baker Johnson in Allegany County, derived from the State and held by him at his death, which included the *locus* of the trespass ; and the only reference to these lands in the will, being in the clause just quoted, there was nothing in that instrument that could aid or affect their actual description.   The decision in *Langley's Lessee vs. Jones,* 26 *Md.*, 462, upon an analogous question, sustains the ruling on this point. It was there held that when the grant and the deed are the same, location of both is unnecessary ; and that where the whole of a tract is located on the plats, a deed conveying the whole may be given in evidence though not itself located.

The second exception of defendants also relates to the will, and mainly rests on the objection there was no sufficient legal evidence that letters testamentary were ever granted to the executors. We do not consider this tenable. While the Register of Frederick County, where Johnson died, testifies that no entry of the issuing of such letters appears upon the minutes of the Orphans' Court, he also testifies that it was not the custom of the Court at that time, in the year 1811, nor indeed until 1859, to make any record or take any proceedings in the granting of letters testamentary other than the formal declaration of appointment, made in the letters themselves, committed to the executor. That the letters in question were issued, abundantly appears from the probate of the will, wherein were named as executors the persons who acted as such; the filing and approval of their bond, and the exhibition to and passage by the Court of their executors' accounts, in one of which is the specific allowance of the fee paid by them to the Register for issuing the letters testamentary.

Whilst the present practice of the Court, followed since 1859, of recording the issue of letters in their minutes of proceedings, is to be approved, we see no sufficient reason because of the absence of such a practice, when the will of Baker Johnson was admitted to probate, to impeach the action of his executors. The facts in their case are not similar to those of the case of *Carlysle vs. Carlysle,* 10 *Md.,* 440, cited by appellants. In that case, the order of the Orphans' Court, relied on by the guardian to protect him for an unfortunate investment of his ward's funds, was simply a verbal one, with no record evidence whatever to support it.

But further consideration of this exception, which with the preceding one, are those only which go to the right of plaintiff to claim through Baker Johnson, is rendered immaterial by the uncontroverted proof, apart from that relating to plaintiff's paper title, which shows that he and those under whom he holds were in full and peaceable possession of the land as the claimants thereof for more than thirty years prior to the institution of his suit. This was a sufficient possession, the defendants setting up no claim whatever to the land, and trespass *q. c. f.* being a possessory action, to enable the plaintiff to sue. *Norwood vs. Shipley,* 1 *H. & J.* 295; *Look vs. Norton,* 55 *Maine,* 103.

The remaining and material questions raised by the defendants in their exceptions upon the testimony and to the instructions of the Court on the prayers are, first, as to the liability of Archibald Stewart, and, secondly, as to the rule of damages.

The fact and extent of the trespass itself are established beyond dispute, and are assumed in the rulings sought by the defendants.

The mining complained of was actually done by the miners of the company, and by extending their headings or cuts across the line of the company's property into the adjacent coal land of the appellee. These miners were

under the control and direction of Stewart, as the manager or mine-boss of the company at its mine ; and it was in obedience to his instructions the mining was done, whilst he was not personally present in every one of the rooms during the general progress of the trespass.    All the coal of the appellee excavated was loaded into the company's mine cars, carried to the surface over their tramways, transported with their own coal to market, and the proceeds of its sale received and retained by the company.

While the President of the corporation testifies that he was ignorant of the commission of the trespass when done, and that Stewart had been generally cautioned to keep within the lands of the company, and Stewart claims that he was misled through relying on a plat of their coal vein, furnished him by the company, made by a skilful engineer, because the outcrop, from an unknown and peculiar formation in that locality, was incorrectly laid down on the map, and not within the company's lines as supposed ; there was evidence adduced tending to show gross negligence on the part of the company, and of Stewart especially, in not adopting reasonable precautions to test the engineer's map, which could have been readily done by a surveyor measuring in from the mouth of the mine, or by sounding with a sledge, as Stewart was. urged to do after he had been informed that the appellee alleged the digging was on his land.    And it was further shown that the trespass, notwithstanding this warning, was continued until appellee began to sink a shaft to verify his claim, and thereupon the miners, who were working just below, were by Stewart's orders recalled to exactly within the company's boundaries.

It is well settled that a trespasser, though misled by a *bona fide* mistake as to his title, or who has taken every precaution to keep within his own lines, cannot escape liability for the injury done, being bound in law to know the limits of his possessions.    No such extenuating circumstances can be fairly set up by the defendants ; and the jury

might reasonably, from the proof, have imputed gross and not merely constructive negligence to the defendants under the circumstances of this trespass.

As to the question raised upon the uniting of Stewart with the Coal Company, his principal or master, as co-defendants, and recovering a joint judgment against them, we perceive no legal difficulty in such joinder.

The law is established that in the case of an agent or servant committing a tort while acting within the scope of his employment, he and his employer may be sued separately or jointly, at the election of the party injured. Nor is it material to the latter's right to sue, in what proportions, if any, they share the benefits of the wrongful act. And if the agent exceed his authority, a subsequent ratification or adoption of his act by his principal, is equivalent to a precedent command.

In the present case the coal taken from the appellee under the orders and supervision of Stewart, was appropriated by the Company; and under circumstances in which the law would plainly affect it with knowledge of how it was procured.

There are cases, it is true, in which the intermediate manager or head employé has been held not liable for trespasses of workmen under him, and in which recourse could be had only to the actual wrong-doer, or to the master, on the principle of *respondeat superior*; but they are distinguishable from those where, as in this case, the tort is in consequence of the command or neglect of the general superintendent. This distinction is recognized in a leading authority relied on by appellants; *Stone vs. Cartwright,* 6 *Term R.* 411. These general principles of liability as between master and servant, and principal and agent apply as well to corporations as to private individuals.

From what we have said it is evident we find no error in the rulings of the Court below upon the point of the relative and joint liability of Stewart and the Company.

Reference may be made to the following authorities upon the principles adverted to : *Berry vs. Fletcher*, 1 *Dillon*, 71 ; 1 *Chitty Pl.*, 173; *Reeve's Dom. Rel.*, 356 (*s. p.*); 2 *Add. on T.*, (*Dudley and Baylies' Ed.*,) 1121, 1122, 1123 ; *Waterman on Tres.*, 28, 48, 69; *Thompson on Liab. Ag. & Serv. of Corp.*, 489 ; 6 *Waite's A. & D. chap. CXXVII, Art.* 3.

The remaining question to be considered is the measure of damages applicable in this case.

The general rule in actions of trespass for mining and carrying away coal, as laid down by this Court in the case of *The Barton Coal Company vs. Cox*, 39 *Md.*, 1, and re-announced in *Franklin Coal Co. vs. McMillan*, 49 *Md.*, 549 is that, the plaintiff is entitled, independently of circumstances of aggravation, to recover the value of the coal immediately upon its conversion into a chattel by severance from the freehold, without abatement of the cost of severance.    In the former case the prayer of the plaintiff on this point, which was excepted to below and sustained on the appeal, applied the substance of the rule in these words : " Such sum per ton as the jury may find the said coal so mined was worth when first severed from its native bed, and before it was put upon the mine cars, without deducting the expense of severing said coal from its native bed."

The rule was adopted by the Court of Appeals after a full consideration of the leading English cases on this subject.   *Martin vs. Porter*, 5 *Meeson & Welsby*, 351; *Morgan vs. Powell*, 3 *Adol. & El.*, *N. S.*, 281; *Wood vs. Morewood*, 3 *Adol. & El.*, 440, and *Wild vs. Holt*, 9 *Mees. & Wels.*, 672.

Among the cases that may be cited in which other Courts of this country have reviewed these English authorities, and applied the same rule of compensation, are *Bennett vs. Thompson*, 13 *Iredell*, 146 ; *Moodey vs. Whitney*, 38 *Me.*, 174; *Maye vs. Tappan*, 23 *Cal.*, 306; and *McLean Co. Coal Co. vs. Long*, 81 *Ill.*, 359, followed in *McLean Co. Coal Co. vs. Lennox*, 91 *Ill.*, 561, (1879.) The first two relate to trespass in cutting down timber

trees, and state the measure of damages to be the value of the timber when it is first cut down and becomes a chattel. The last three cases grew out of trespasses in mining, and announce the same principle. In the Illinois cases, however, as in the cases of *Martin vs. Porter* and *Morgan vs. Powell,* while the amount to be recovered is fixed by the worth of the coal when first dug, the mode of reaching this value is through the price of the coal after it arrived at the pit's mouth, and allowing a deduction for the cost of conveying it thither from the place where it was mined. This is said to be because it could have no value as a saleable article without being taken from the pits, and that was the earliest moment at which the plaintiff could have re-possessed himself of the coal. But, as Lord DENMAN, in *Morgan vs. Powell,* says, "Instances may easily be supposed where particular circumstances would vary this *mode* of calculating the damage."

As the fact to be arrived at, is the worth of the coal just after its severance and before the removal is begun, it does not vary the rule of compensation whether its value at that time is ascertained by what it would sell for when brought to the surface, and then deducting the mere cost of bringing it there, or by estimating its worth before it was removed, where, as in the present case, it has been actually taken from the pit and sold.

In the case that may be supposed, of coal being dug on land that has no opening of its own, and not removed, it would have but little if any value greater than when in its native bed, to the owner who had no means of removing it himself; and his recovery would, practically at least, be estimated by what damage was done to his coal-bed by such digging. But in the present case, the particular coal in question having been actually carried away and sold, the computation of its value when just separated and prior to removal, would be an easy process.

It does not seem material in a case like this, whether the value of the coal at the mine's mouth be first ascertained and then an allowance be made for the bare expense incurred in its simple conveyance thither, or witnesses be asked to estimate directly its value just prior to its removal. The rule of compensation is practically observed in either case. The former method is not deemed inconsistent with the rule in the Illinois cases, as the Court in the first named, whilst stating, "plaintiff could recover as damages, the value of the coal at the mouth of the shaft, less the cost of conveying from the place where it was dug," expressly adds: "This is in effect saying he can recover the value of the coal when it first became a chattel, by being severed from the mass and under their (defendants') control."

Objection was made below to the method adopted by the plaintiff, in his question to the witness Aspinwall, of proving the value added by severance to the native coal, by showing the cost of digging it, and of the propping indispensable to enable the miners to proceed with the severance. We deem it unnecessary, however, to pass upon the appellants' third exception in which this question is presented; because the record does not disclose what answer, if any, was made by this witness, and accordingly it does not appear that the appellants were injured by his testimony; and for the further reason that the rule of damages was correctly laid down by the Court to the jury for their guidance, in the plaintiff's fourth prayer.

The offer of defendants contained in their seventh exception, was properly excluded. It was an effort to show that the cost to plaintiff of opening and equipping a mine on his own land, considering the small number of acres in his. tract, would be so great as to render his coal valueless. This was prescribing a certain and expensive mode as the only one through which the plaintiff could derive any profit or advantage from his ownership. By such a stan-

dard coal in its native bed could have no value unless its owner were first to expend a sufficient sum in sinking shafts and providing tramways, cars, &c., to move it. If this were a proper test, the owners of tracts large enough to justify such extensive operations might, with impunity, appropriate coal as good in quality and natural situation as their own from adjacent proprietors, whose parcels did not happen to be equal in extent to their own. Besides, in this case, such a mode of valuation was irrelevant, the fact being, that the coal mined had been actually taken off and sold, and the real inquiry was what the identical coal so taken was worth before it was loaded into the company's mine cars.

The ruling below in defendants' eighth exception, refusing to permit the question: " In removing the plaintiff's coal from the place of severance to the mouth of defendant's mine, what would be a fair allowance for the use of the defendant company's tramway, mining galleries and cars ?" was clearly correct. To allow such proof would have been in direct conflict with the law as laid down in the Barton Coal Company case, where an allowance for the equipments and facilities, as such, of the trespassing company was denied. The question is quite a different one from what deduction would have been reasonable and fair for the actual expense of loading and hauling the coal from where it was dug to the surface, had testimony been offered to show its saleable value at that point.

The grounds of objection to defendants' foregoing offer, are equally applicable to all their other exceptions, covering their efforts to introduce, as bearing upon the value of the severed coal, an estimate of the established equipments, and facilities of the Blaen Avon Company, which were erected for its own operations.

The prayers of the plaintiff upon the measure of damages as to the injury done to his coal property, exclusive of the coal carried away, in impairing the worth of and

making more difficult to mine the coal that was left, through destructive and wasteful modes of excavation, we find to be clearly sustained by the decisions in 39 *Md.* and 49 *Md.*, already referred to; and, accordingly, they were properly granted by the Circuit Court.

From the expression already given of our views upon the principles underlying this case, it is unnecessary to examine the exceptions of the appellants in further detail; as they are all substantially disposed of. It is sufficient, therefore, in conclusion, to say, that after full consideration of the rulings of the Court below, notwithstanding the ingenuity with which the views of the defence were presented and maintained, we find no error in them, and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 16th February, 1883.)

[After appeal taken in the foregoing case, the plaintiff below, Robert C. McCulloh, died, and the appearance of his administrators, was entered. REP.]