# Thomas Pressed Brick Co. v. John A. Herter.

1. MEASURE OF DAMAGES—*For Coals Taken.*—The measure of damages for coal unlawfully mined and taken from the premises of another is the value of the coal at the mouth of the pit or mine, less the cost of conveying it there from the place where it was mined, allowing nothing for digging or the labor of separating stone, sulphur, slate, earth or other substances from it, or for other acts necessary for the production of the coal as an article of commerce.

Trespass, for taking coals. Appeal from the Circuit Court of Calhoun County; the Hon. GEORGE W. HERDMAN, Judge, presiding. Heard in this court at the November term, 1894. Affirmed. Opinion filed June 3, 1895.

A. G. CRAWFORD and J. F. GREATHOUSE, attorneys for appellant.

T. J. SELBY and FRANK A. WHITESIDE, attorneys for appellee.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

This was trespass brought September 5, 1894, by appellee to recover against the appellant company for coals taken by it from his lands as he alleged.

The issues made by the pleading so far as it is necessary to note them were that the defendant was not guilty, and the causes of action set forth in the declaration did not accrue within five years before the institution of the suit.

A hearing before the court and a jury resulted in a verdict in favor of the appellee in the sum of $2,455. Appellant moved for a new trial. Appellee entered *remittitur* of $955.

The motion for a new trial was overruled and judgment rendered by the court against the appellant company in the sum of $1,500, to reverse which it has prosecuted this appeal.

The appellant company urges, first, that it did not appear from a preponderance of the evidence that it had taken

coals from the lands of the appellee; second, if such did so appear it was not shown by the evidence that coal was taken within five years prior to the commencement of the action; third, if it did sufficiently appear from the evidence that some coal was so taken within the period in question the damages allowed therefor were excessive and were not cured by the *remittitur.*

It appeared from the evidence that the parties to this action owned adjoining tracts of coal-bearing lands. The appellant company operated a mine upon its land, and we find it very clearly and satisfactorily shown by the evidence that it extended the mine into and removed coal from the land of the appellee. The evidence is not in serious conflict upon this point, and we think it was not less clearly shown that coals were taken from the lands of the appellee by appellant's miners within five years immediately preceding the institution of the action.

The quantity taken within that time is not so clearly disclosed.

The land of the appellee adjoined that of appellant upon the north.

The main entry of appellant's mine ran almost directly north until it reached the line of appellee's land and then deflected to the northeast. At the point of deflection a side entry was excavated toward the northwest. Appellant's miners, within five years before the action begun, took coal from rooms opening into these entries from the north.

Still another entry was opened, beginning about twenty-five feet from and beyond the point of deflection of the main entry and extending due east near one hundred and fifty feet, and the coal north of this last mentioned side entry and between it and the main entry, called the "flat-iron" shaped room, was also mined by the appellant.

This work it seems clear was done in appellee's land and within less than five years prior to the institution of the suit.

The area of these different rooms and of the triangular or "flat-iron" shaped tract could be reasonably well ascer-

tained from proofs produced to the jury. The coal vein was shown to have been of the thickness of from twenty-four to thirty inches, and it was proven that a cubic yard of coal would weigh one ton.

Data here existed from which the quantity of coal taken might be estimated with reasonable certainty.

More exact information was possibly accessible to the appellant company, as it had control of the opening to and entries of the mine.

Estimates based upon the data mentioned would seem to fix the quantity of coal taken from appellee's land in the time mentioned at from 1,300 to 1,600 cubic yards, equivalent to as many tons.

The measure of the appellee's right of recovery or damages is the value of the coal at the mouth of the pit or mine, less the cost of conveying it there from the place where dug or mined, allowing nothing for digging or the labor of separating stone, sulphur, slate, earth, or other substance from it. Nothing is to be allowed the appellant company for the mining, or any other acts necessary to the production of the coal as an article of commerce. McLean Coal Co. v. Lennon, 91 Ill. 561.

The evidence showed that the coal was reasonably worth $2.50 per ton at the mouth of the shaft.

There was much conflicting evidence and many variant opinions expressed relating to the cost of transporting the coal from the place where it had been mined to the surface of the earth. Accepting 1,300 tons (being the lowest estimate) as the quantity mined upon appellee's land within the time in question, and, according to the appellant company, every reasonable view of the evidence as to the cost of transporting it to the mouth of the shaft, the judgment does not appear excessive, but clearly well supported.

No reason appears demanding interference with the judgment of the trial court. It is affirmed.