# SUMMERFIELD B. MEDAIRY et al. *vs.* CHARLES E. McALLISTER.

*Pleading— Trespass de Bonis Asportatis—Evidence— Goods Being Unlawfully Sold Cannot be Seized by Private Person—Advice of Counsel—Oleomargarine Forcibly Taken From Dealer—Punitive Damages—Joint Tort Feasors.*

When, after leave to amend has been granted, a new plea, bearing the same number as the original one, is filed, the latter will be considered as withdrawn.

That a party acted in good faith, under the advice of counsel learned in the law, and without malice, is no defense to an action of trespass for unlawfully carrying away plaintiff's goods.

Since oleomargarine may under some conditions be lawfully possessed and sold, a declaration charging defendant with forcibly taking oleomargarine from the plaintiff is not defective because it does not negative the existence of such facts as would make its possession by the plaintiff unlawful.

A declaratton charging the defendant with unlawfully entering plaintiff's place of business and forcibly taking and carrying away a tub of oleomargarine to the injury of plaintiff's business is not defective, inasmuch as trespass *quare clausum fregit* may be combined with trespass *de bonis asportatis;* and the allegation as to the injury to plaintiff's business was only intended to enhance the damages

In an action for unlawfully taking away oleomargarine from plaintiff's possession, evidence that the police had been ordered to take certain action looking to the arrest of alleged violators of the oleomargarine law, and that the plaintiff had been previously convicted of violating said law, is not admissible.

The fact that a party is engaged in the business of selling certain articles in violation of law does not authorize a private person to enter his shop and forcibly carry away such articles ; and in action to recover damages for such trespass he is entitled to punitive damages.

The defendant M. was a member of a Butter Dealers Protective Association and was active in the prosecution of persons selling oleomargarine in violation of law.   Another defendant, W., was employed by the association to procure evidence against dealers in oleomargarine.   The defendant W. went to plaintiff's shop and tried to buy a package of yellow oleomargarine, but the plaintiff refused to sell.   W. then consulted with M. who told him that if plaintiff would not sell he was justi-

fied in taking a package as evidence. W. then returned to plaintiff's shop, seized a tub of oleomargarine and, against plaintiff's protest, carried it away to M.'s place of business. In an action of trespass, *Held*,

1st. That since the evidence shows that W. was acting under the instructions of M., the jury was properly instructed that the plaintiff was entitled to recover against both.

2nd. That it was also proper to instruct the jury that they could award to plaintiff punitive damages if they found that the taking was done willfully, wantonly, against the protest of plaintiff and with full knowledge on the part of the defendants that the said goods were the property of the plaintiff.

In the above case two other parties were also made defendants, and at the close of the evidence the defendants all asked the Court to instruct the jury that there was no legally sufficient evidence to warrant a finding against them. The Court granted this instruction as to the two other defendants but refused it as to M. and W. *Held*, that upon an appeal from a judgment against them by M. and W. they cannot be heard to say that the instruction as granted was erroneous and that there was evidence against the discharged defendants although they had asked the Court to rule that there was none.

Appeal from the Court of Common Pleas (RITCHIE, J.), where the plaintiff obtained a judgment for $750.

*Defendant's 7th Prayer.*—The jury are instructed that malice in law means an act done wrongfully, and without reasonable or probable cause and not, as in common parlance, an act dictated by angry feeling or vindictive motives, and in order to a recovery by the plaintiff in this action of substanitial damages there must be evidence of malice. (*Rejected.*)

*Defendant's 8th Prayer.*—The jury are instructed that there is no presumption of malice—the plaintiff must prove it. (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*George Whitelock* and *James Hewes* (with whom was *Edward I. Koontz* on the brief), for the appellants.

*W. Calvin Chesnut* and *Stuart S. Janney* (with whom were *Gans & Haman* on the brief), for the appellee.

Boyd, J., delivered the opinion of the Court.

This suit was instituted by the appellee against S. B. Medairy, J. K. Bosee, C. G. Wanner and the Wholesale and Retail Butter Dealers' Protective Association of Baltimore City for entering the plaintiff's place of business and forcibly taking and carrying away a tub of oleomargarine.

The defendants filed the general issue plea and a second plea which was demurred to and the demurrer was sustained. It was defective, but if it was not it could not be reviewed by us, as the defendants filed an amended second plea. When under leave to amend, a new plea bearing the same number as the original one is filed, the first will be considered as withdrawn. *Lake* v. *Thomas*, 84 Md. 608. The amended second plea alleged that the defendants had consulted counsel learned in the law, had laid before him all the material facts within their knowledge, of and concerning the plaintiff's business, and concealed nothing material, and they were advised by the said counsel to take the package of oleomargarine, to be used in a subsequent prosecution of the plaintiff, and they acted under his advice, believing the same to be sound, and without malice. A demurrer to that plea was also sustained and there can be no doubt that it was demurrable. We are not aware of any authority that would excuse a defendant for the seizure of another's goods because his counsel advised him to do so. The plea was offered as a bar to recovery, and therefore it is unnecessary to consider how far such facts as it alleges could be introduced for the purpose of denying malice.

But it is contended that the declaration was defective and the demurrer to the plea presents for determination its validity. In the first place it is said that it fails to show that the oleomargarine was imported from without the State and that it was not a deleterious product. Without deeming it necessary to determine whether the plaintiff would be entitled to recover in an action of this kind, if no oleomargarine could be lawfully sold, it is sufficient to say that the *nar.* does not disclose any fact that made its possession unlawful. It was alleged to be in the original package, and for aught that appears

in the declaration, may have been of the character that was expressly authorized to be sold by Art. 27, sec. 88, of the Code, as amended by the Act of 1900, ch. 496. If it was not, but was shipped from another State, in the original package, the case of *McAllister* v. *State*, 94 Md. 290, protected it and there is no presumption that it was held in violation of the law. We held in *Wagner* v. *Upshur*, 95 Md. 519, that the plaintiff could recover, in an action of replevin, a gambling instrument which could be put to a legitimate use, and that such instrument could not be summarily seized by the police under its power to prevent crime, until it had been determined in a criminal proceeding that the article was held or used for an illegal purpose by the person from whose possession it was taken. When then oleomargarine may under some conditions be lawfully possessed and sold, a declaration which does not disclose any unlawful use of it certainly cannot be defective because it does not negative such facts as make its possession unlawful.

It is also contended that the declaration is defective, because it alleges in one count a trespass *quare clausum fregit*, a trespass *de bonis asportatis*, and injury to the plaintiff's business. The allegation is that the defendants "unlawfully entered the plaintiff's place of business * * * and forcibly took and carried away the plaintiff's goods, etc." That can hardly be said to be an action of trespass *quare clausum fregit*, in which the gist of the action is the injury to the possession, for the declaration shows that the ground of action was the asportation of the goods, and does not allege that the defendants broke and entered, etc. But, if it be conceded that it does embrace the two, it would by no means be an unusual practice in this State. Take for example the case of *Barton Coal Company* v. *Cox*, 39 Md. 1, in which the Court said: "The declaration was filed in the names of the co-plaintiffs, containing three counts, which, as far as the distinctive forms of actions can be recognized in our present system of pleading, may be designated as *trespass quare clausum fregit et de bonis asportatis* combined. The first count is a general one, charging that the

defendant broke and entered the *locus in quo* and mined, dug, excavated and carried away large quantities of coal." The second and·third counts set out the trespasses with greater minuteness, but in substance made the same allegations as in the first. That is the form adopted in this State in such actions, as will be seen in *Franklin Coal Company* v. *McMillan*, 49 Md. 549, and *Blaen Avon Coal Company* v. *McCulloh*, 59 Md. 403. The allegation as to the injury of the plaintiff's business was only intended to enhance the damages. Under our system of pleading the declaration was sufficient.

The first exception was to the refusal of the Court to permit the defendants to ask the plaintiff for whom he sold butter, but as its relevancy does not appear, we will not discuss it, especially as the Court subsequently instructed the jury that there was no evidence of damage·to the plaintiff's business. The second bill of exceptions presents the ruling on two prayers offered by the defendants at the close of the plaintiff's testimony, but as the defendants then proceeded with their testimony, the exceptions to those rulings were waived. In order that later proceedings may be understood, it is proper, however, to add that the Court then instructed the jury that the plaintiff had not offered sufficient legal evidence against Mr. Bosee and the Butter Dealers' Association to warrant the jury in finding against them, and a verdict was accordingly rendered in their favor at that time. The third exception contains an offer to prove, by a member of the police force in Baltimore, what his orders were with respect to the plaintiff, and his having oleomargarine in his possesion in November, 1900. The Court properly sustained an objection to that.

The fourth presents the ruling of the Court on an offer to· show by the secretary of the Board of Police Commissioners, and a copy of the order of the marshal of police, that the police captains of the city were directed, upon the faith of an opinion of the counsel of the board, "to take certain action looking to the arrest of alleged violators of the oleomargarine law." An objection to that was properly sustained, as was also the one in the offer in the fifth bill of exceptions that the plaintiff was

convicted in 1890 for the violation of the oleomargarine laws.

At the conclusion of the whole testimony, the plaintiff offered three prayers which were granted, and the defendants offered ten, all of which were rejected excepting the fifth. Those offered at the conclusion of the plaintiff's testimony were apparently renewed, although the first is marked "offered at close of plaintiff's case." That prayer asked the Court to instruct the jury that the plaintiff had not offered legally sufficient evidence to warrant the jury in finding against Medairy, Bosee and the Butter Association and their verdict must be for said defendants. That was granted by the Court at the end of plaintiff's case, after striking out the name of Mr. Medairy, and at the conclusion of all the testimony, the same prayer was apparently offered and the same modification made, and it was then again granted as modified. In order to properly raise the question of the legal sufficiency of the evidence against Medairy, there ought to have been a prayer offered as to him alone—the other two defendants named in the prayer having already had a verdict entered in their favor, and the Court would therefore have been justified in then rejecting this prayer as offered. But as the sixth bill of exceptions says it was granted with the modification, and an exception was taken to the striking out of Mr. Medairy's name, we will treat it as thus disposed of at the end of the case.

There can be no doubt about the sufficiency of the evidence against Mr. Wanner, and therefore the second and third prayers of the defendants were properly rejected, as they sought to withdraw the case from the jury. By the plaintiff's first prayer, the Court instructed the jury "that it being the undisputed evidence in this case that the defendant, Charles G. Wanner, did on or about the 22nd day of November, 1900, take and carry off from the possession of the plaintiff the goods mentioned in the declaration, their verdict must be for the plaintiff as against said Wanner. And if the jury find that the said Wanner in taking and carrying off said goods was acting as the agent or by the authority or insrtuctions of the defendant, S. B. Mediary, then the verdict of the

jury must be for the plaintiff as against both of said defend-
ants." There was no special exception to this prayer, to the
effect that there was no legally sufficient evidence of those
facts, as to Mediary, but assuming that the defendant's first
prayer presented that question, we will now consider it.
Three of the plaintiff's and one of the defendant's witnesses
testified that when Wanner took the oleomargarine, he said he
did so by the direction of Medairy. That of itself would not
be sufficient to establish that fact, as Medairy could not be
held liable by such statement of Wanner, made out of his
presence. But there was ample testimony to justify the Court
in submitting to the jury the question of Medairy's liability.
Wanner went with the city detectives to the plaintiff's place of
business and tried to buy a package of the oleomargarine, but
was refused. He and the detective talked the matter over
and the latter advised him to telephone to Medairy, which he
did. He testified "I asked Mr. Medairy what instructions
they had received from the counsel, and Mr. Medairy stated
the counsel had received from the Police Board the right to
go ahead, where they refused to sell, and take a package as
evidence." After speaking of McAllister's refusal to sell, the
counsel for plaintiff asked the witness, "Then you went off for
further instructions?" to which he replied, "I went off and tel-
ephoned to Mr. Medairy." The counsel said, "I want you to
answer that question, yes or no. Did you or not go off for
further instructions about the matter?" and he answered,
"Yes sir, of course I did." The testimony shows that Wan-
ner and the detective had been at Medairy's place of business,
where they had seen him, before the package was taken, and
after it was seized they took it to the office of Medairy's firm
and he then examined it. The jury was not only justified in
drawing an inference from the testimony that Wanner acted
under the authority, or instructions of Medairy, but it is diffi-
cult to see how any other conclusion could have been reached
by them. Medairy was a member of the Butter Association
which was according to his own testimony, organized to pro-
mote the interests of the people in the butter trade, and with

the assistance of the police authorities, to prosecute actual or alleged offenders of the law. He contributed to Wanner's salary, who was employed by the association, and he had been active in many of the prosecutions for alleged violations of the oleomargarine laws. When the question arose as to the powers of Wanner, to seize a package, he telephoned Medairy who, to use his own language, said, "I stated to him that my understanding was that wherever he found yellow oleomarga- rine he was to make the effort to buy a package, and if he failed in his efforts to purchase a package he was justified in taking a package as evidence ; that that was my understand- ing." Wanner then immediately returned to plaintiff's place of business, seized the package and took it to the office of Medairy's firm, and there is other evidence in the record tend- ing to show that Medairy was advising Wanner in the matter. If any authorities be necessary to show that Medairy and Wanner could be sued together, many of them will be found in 26 *Am. & Eng. Ency. of Law* (1st ed.), 575, 580. See also *Blaen Avon Coal Company* v. *McCulloh*, 59 Md. 403. The first prayer of plaintiff was therefore properly granted, and that of defendants was properly modified by striking out Me- dairy's name.

The plaintiff's second prayer authorized the jury to award punitive damages, if they found that the "taking was done willfully, wantonly, against the protest of plaintiff and with full knowledge on the part of the defendants that the said goods were the property of the plaintiff." There are numerous de- cisions of this Court on the subject of punitive damages, but it will not be necessary to refer to many of them. In *Moore* v. *Schultz*, 31 Md. 418, which was an action of trespass *de bonis asportatis*, it was said that ordinarily in suits of this character the plaintiff is entitled to recover the value of the goods taken, if they be not returned, with interest to the time of the trial, if there be no circumstances of aggravation, "But if the trespass be committed in a wanton and aggravated manner, indicating malice, or a disregard of the rights of others, and the circum- stances of the case afford no justification, in addition to the

measure of compensation just stated, the jury will be allowed
to make reparation, not only for the loss of property, but for
outraged feeling and reputation; and this may be carried to
the extent of setting a public example to deter others who may
be alike evilly disposed." It is urged on behalf of the appel-
lants that they were engaged in an effort to punish violators
of the law, and that the appellee was prominent in that class,
in reference to the statute against the sale of oleomargarine,
but, however much private citizens are to be commended for
their assistance in suppressing crime, there are some things in
this case that made it imperative on the trial Court to grant
this prayer. If the appellee was in fact violating the law at
the time of the alleged trespass, it might readily have been
established without resorting to such means as were adopted.
Samples of the oleomargarine could probably have been pro-
cured by purchase, if Wanner had acted more discreetly. It
was not surprising that McAllister refused to sell to him, if he
knew, as he apparently did, that his object was to institute
proceedings against him, but certainly some one might have
bought the oleomargarine, as the appellee was apparently get-
ting it for sale. But whether that be so or not, criminal prose-
cutions are usually more fairly conducted by the legally con-
stituted authorities than by those who have personal or busi-
ness reasons for carrying them on. If those dealing in butter
had just ground to believe that the appellee and others were
violating the law, they had the right to report them to the law
officers, and as long as they kept within proper bounds could
with propriety assist those officers, but it is difficult to imagine
a greater indignity upon a merchant than to have some one
enter his store and forcibly carry off his goods without author-
ity, and especially when it is done for the benefit of some com-
petitor or competitors in his business. Wanner was duly
warned, but not only persisted in taking the package, but did
so under the protection of a detective whom he took with him
for that purpose, and upon the theory that the appellee was
guilty of a criminal offense in having it in his possession, which
was afterwards determined by this Court not to be the case.

Such conduct is well calculated to cause a breach of the peace, and under the circumstances it would be a very insufficient compensation to simply award, as damages, the value of the goods taken. When the facts justify the trial Court in submitting the question of allowing punitive damages to a jury, it can, on motion for a new trial, afford protection against excessive verdicts, but if the circumstances be such as may entitle a plaintiff to such damages, it is the duty of the Court to submit that question to the jury. For such damages in actions of this character, see also *Schindel* v. *Schindel*, 12 Md. 108; *Young* v. *Martens*, 27 Md. 114, *Strasburger* v. *Barber*, 38 Md. 103; 1 *Poe*, sec. 240. There was no error in granting this prayer and in rejecting the defendant's fourth, which sought to limit the recovery to actual expenses.

. The plaintiff's third prayer simply announced the law as determined by this Court in *McAllister* v. *State,.supra.* The sixth of the defendants was properly rejected, because it sought to take the case from the jury. The seventh and eighth, to say the least, would have been misleading. From what we have already said, it is evident that the ninth and tenth were properly rejected.

The only remaining question to be considered is, whether the appellants can complain because the Court granted the prayer exonerating Bosee and the Butter Dealers' Association, but declined to grant it as to Medairy. The theory of that objection is that if Medairy was liable the other two defendants were and could have been required to bear their share of the verdict if they had not been acquitted. But without going into the question of contribution between joint tort feasors, or of the right of the plaintiff to sue one or more of a number of them, or to dismiss the suit as to some of them, we are not aware of any practice in this State which would justify a reversal of the judgment on this ground. If it would, then if the prayer had been granted as offered, including Medairy, and judgment had been rendered against Wanner, he could have had it reversed because the others were discharged. The same counsel represented all the defendants, and if he

was not willing to have the two discharged unless all three were, he could have asked leave to withdraw the prayer when he found that Medairy's name would be stricken out. But how can the question be reviewed here to the prejudice of the appellee? He did not offer the prayer and had no control over it. The three defendants, including Medairy, asked the Court to say that the plaintiff had not offered sufficient legal evidence to warrant the jury in finding against them, and when the Court so instructed them as to Bosee and the Butter Dealers' Association, can Medairy now question what he thus asked the Court to instruct the jury? He has no right to complain that the Court agreed with him in that respect, and being a party to that prayer cannot question it by now saying there *was* evidence against those parties. If the appellant's contention be correct, it would prevent one attorney from appearing for a number of defendants in an action of tort. If there was not sufficient evidence against Bosee and the Association, they were entitled to have a verdict entered in their favor, yet the attorney representing them could not under that theory ask for that verdict because it would prejudice the other defendants. So without discussing the question as to whether there was sufficient evidence against those two defendants we think it is clear that the appellants cannot complain of that ruling of Court on this ground, and we have already considered it with reference to the legal sufficiency of the evidence against Medairy.

> *Judgment affirmed, the appellants to pay the costs.*

(Decided June 30th, 1903.)