## McCLUNG-LOGAN EQUIPMENT COMPANY, INC. *v.* THOMAS

[No. 324, September Term, 1960.]

(Two Appeals In One Record)

138

*Decided July 7, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, MARBURY and SYBERT, JJ.

*John S. McDaniel, Jr.,* with whom were *Cable & McDaniel, Mannes F. Greenberg* and *Richard F. Cadigan* on the brief, for appellant.

*Everett L. Buckmaster,* with whom were *George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* and *D. Franklin McGinnis,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

This case involves two appeals from the Circuit Court for Baltimore County. The first appeal is from a directed verdict for the appellee in a replevin action instituted by the appellant, McClung-Logan Equipment Company, Inc. (conditional seller), against the appellee, Donald J. Thomas (conditional buyer), to recover possession of an Allis-Chalmers diesel tractor and a hydraulic dozer, with equipment (hereinafter collectively referred to as the tractor).

The second appeal is from a judgment rendered by the same court, upon a verdict of a jury for the sum of $9,975.01 (less a remittitur of $500.00, representing the amount the jury could have allowed the appellee as counsel fees) in favor of the appellee (counterclaimant) against the appellant (counterdefendant) for damages claimed for the wrongful seizure and detention of appellee's tractor, allegedly aggravated by the wanton, wilful, and malicious conduct of appellant. The counterclaim contained six counts, four in tort, and two in contract. At the conclusion of the appellee's case as counterclaimant, appellant's motion for a directed verdict was overruled as to counts 1, 2, 3, and 6, but granted as to counts 4 and 5. Counts 1, 2, and 3 were tort counts for trespass and conversion and count 6 was based upon an alleged breach of contract by appellant.

On March 4, 1958, appellant sold the tractor to appellee under a conditional contract of sale for $21,115.00. Appellee paid $6,925.00 as a down payment and the balance of $14,190.00 was to be paid in twenty-four equal monthly installments of $591.25 each, beginning with April 4, 1958, and evidenced by twenty-four promissory notes of $591.25 each, maturing on the same date as the respective monthly installments. The notes were without interest from date until maturity, and 6% from maturity until paid. The tractor was sold with a warranty to repair or replace within a six months'

period parts found defective according to the terms of the contract.

On March 5, 1958, appellant sold, transferred, and assigned all of its right, title, and interest in and to the said conditional contract of sale and the tractor referred to therein to the Union Trust Company of Maryland and endorsed, with recourse, over to the Union Trust Company the twenty-four promissory notes given by appellee to appellant. Appellant's comptroller, Taylor, executed the assignment and endorsed the notes. The contract and notes were then delivered to and discounted with the Union Trust Company.

The controversy out of which this case arose began when appellee discovered in the Spring of 1958, after he began to use the tractor, within the warranty period, that the tractor was defective. The tractor developed its first leak in March, along with other trouble, and erratic blade action in April of 1958. In May, when appellee started his grading work, he discovered that the tractor would not perform contour grading in a satisfactory manner and he would have to use other equipment to complete the work the tractor was supposed to do. These conditions were promptly reported to appellant, who sent mechanics to inspect the tractor and make repairs, but they failed to remedy the condition.

Appellee continued to complain and request that the defective condition be corrected, but to no avail. Many of his requests were simply ignored. This went on for more than a year, until finally appellee, who had paid the regular monthly payments for twelve months, told appellant, after making the twelfth payment in March of 1959, that his season was here again and that he was not going to continue making payments until the tractor was fixed. He did this in order to induce appellant to fix the tractor. Appellee withheld the monthly payments beginning with April, 1959, and put them in the Commercial and Savings Bank in Bel Air.

On April 8, 1959, Mr. Alvis, a factory man from Allis-Chalmers, came out and, after a three hour inspection, told appellee he had a legitimate complaint. Mr. Alvis said he would study the matter, determine what the trouble was and

that appellee would hear from him. The report of April 8, 1959, shows that the complaint was "erratic blade action and that the tractor would not maintain a level cut as the frames oscillated." The diagnosis was that the need for service was urgent and that the top leaf of the main spring was not the same length on each side of the center bolt, causing one frame to oscillate more than the other.

In May of 1959 appellant sent a mechanic who installed a new spring in the tractor, but this did not correct the trouble. During all this time appellee, in his busy season, had to use other equipment to straighten out the grade. Appellee made numerous telephone calls to appellant about the condition and on July 10, 1959, two mechanics came out and went over the hydraulic system, but did not overhaul the control valve. The tractor still would not perform properly and the mechanics suggested that they take the tractor to appellant's shop. Appellant's Mr. Tennant, who was in charge, asked appellee's permission to take the tractor into the shop where proper test equipment could be used to check everything. Appellee replied that that was all right with him, but he first wanted a letter from appellant saying the tractor would be properly fixed and returned to his place for a field demonstration. Mr. Tennant said that he did not have that authority and referred appellee to Mr. Taylor, the comptroller, who did.

The same day, July 14, 1959, appellee spoke to Taylor and asked for such a letter. Taylor then asked appellee about the payments. Appellee told Taylor that when the tractor was fixed and field demonstrated to do satisfactory work, the payments, which were then four months in arrears, would be brought up to date. Taylor acquiesced in this arrangement and agreed to write the letter and send it up with Mr. Cloud when he came to get the tractor. Neither Mr. Cloud nor the letter arrived and appellee called Taylor again. Taylor then, as an excuse, said that the trailer on which the tractor had to be moved over the state roads was busy, that the permit to use it had been held up, but the trailer and the letter would be up the next day. These excuses were not true for, without notice to appellee, appellant's officers had met and de-

cided to replevy the tractor. The trailer and letter did not arrive. However, on July 17, 1959, appellant, in complete disregard of its agreement to send the letter and pick up the tractor for testing and repairs, did, without any notice to appellee, obtain a writ of replevin, issued out of the Circuit Court for Harford County, and seize the tractor, although it knew that all right, title, and interest to the tractor had been assigned to the Union Trust Company and had not been reassigned to it.

Neither the contract nor any of the notes were reassigned to appellant until ten days after the writ was issued, although the four notes, then in default, had been charged to the appellant's account at the Union Trust Company and forwarded, without endorsement, to the appellant as they became due. At the time the replevin suit was instituted appellant had in its physical possession these four notes. The Union Trust Company was not a party to the replevin proceedings and had not, prior to the institution thereof, requested the appellant to institute the suit.

On July 21, 1959, four days after the tractor was seized, appellant sent appellee a registered letter stating that the tractor could be redeemed upon payment of $6,793.97. Upon receipt of this letter, appellee went to the Bel Air office of appellant's attorney, who had signed the affidavit attached to the writ as agent and attorney for appellant. There, appellee offered to pay the sum demanded, first, by tendering a Recorder's check (which appellee testified was the same as a certified check, was guaranteed and could not be cancelled), and then by offering to get the cash from the Commercial and Savings Bank, which had just issued the Recorder's check a few minutes before, and which was only a block away from the attorney's office. The attorney refused to accept either the check or cash after contacting appellant's Baltimore attorney, and said the appellant wanted more money.

After he was told that appellant wanted more money, appellee went to Baltimore, went first to the Union Trust Company and then to the office of appellant's Baltimore attorney and offered to pay all of the money that appellant was then

claiming. Appellee was then told he could not get the tractor unless he paid the amount demanded, and also signed a release of all claims against the appellant, including any claim for defects under the warranty. The defects covered by the warranty had never been fixed and appellee refused to sign such a release.

Appellee then employed an attorney who, on July 28, 1959, filed the appellee's motion for return of the property and the court (Lindsay, J.), on July 31, 1959, ordered the issuance of a writ of *retorno habendo* for the return of the tractor to the appellee upon his filing of bond in the same amount as the replevin bond.

On August 18, 1959, appellee filed his pleas to the declaration in replevin and also on the same date filed a counterclaim against the appellant.

Upon the Suggestion and Affidavit of the appellant the case was removed to the Circuit Court for Baltimore County for trial on April 12, 1960. It was tried before a jury beginning September 19, 1960 (Menchine, J. presiding). At the conclusion of the plaintiff's case in the replevin suit appellee's motion for a directed verdict was granted and judgment entered after the overruling of motions for new trial and judgment N.O.V., which gives rise to the first appeal.

The case then continued upon the counterclaim and resulted in a verdict in favor of the appellee in the sum of $9,975.01, which was followed by appellant's motion for a new trial or judgment N.O.V. The court granted the appellant's motion for new trial unless remittitur in the amount of $500.00, being the amount representing appellee's attorney's fees, was filed within five days. The remittitur was timely filed and judgment entered in appellee's favor for the amount of the verdict, less the amount mentioned in the remittitur, and this is the basis for the second appeal.

## First Appeal—Replevin Case

The appellant contends that the trial court erred in granting the appellee's motion for a directed verdict at the conclusion of the testimony in the replevin case.

It is well settled that in order to maintain an action of replevin the plaintiff must prove his right to immediate possession at the time the writ issues. *Koch v. Mack Motor Truck Corp.,* 201 Md. 562, 95 A. 2d 105; *Dermer v. Faunce,* 187 Md. 610, 612, 51 A. 2d 76; 46 Am. Jur., *Replevin,* § 25, 16; 77 C.J.S., *Replevin,* § 184, 137; 1 Poe, *Pleading and Practice* (Tiffany Ed.), § 251, wherein it is stated in part "* * * for unless at the time of issuing the writ the plaintiff has the right of possession, he can not succeed, whatever may be his title in other respects." The gist of the action is the plaintiff's right to possession and he must sustain the burden of proof. 1 Poe, *supra,* § 253. The action does not establish absolute title to the property but only the right to possession. The plaintiff must rely on the strength of his title, not the weakness of his adversary's.

The uncontradicted fact was that when on July 17, 1959, the appellant caused a writ of replevin to be issued, it possessed four notes which were sent to it by the Union Trust Company upon charging its account with the amount of said notes when the appellee was in default. However, the notes were not reassigned along with the conditional sales contract until July 27, 1959, which was ten days after the replevin action was instituted and the tractor seized. The law is clear that an absolute and unconditional assignment of a conditional sales contract by the vendor thereunder vests in the assignee of the contract such right, title and interest in the property as his assignor had. *Plaza Corp. v. Alban Tractor Co.,* 219 Md. 570, 151 A. 2d 170; *Burrier v. Cunningham Piano Co.,* 135 Md. 135, 142, 108 Atl. 492; 6 C.J.S., *Assignment,* § 82, p. 1136; 47 Am. Jur., *Sales,* § 931, p. 140. And until the conditional sales contract is reassigned to the assignor he is not entitled to the possession of the property. 47 Am. Jur., *supra,* § 929, p. 138; 78 C.J.S., *Sales,* § 641, p. 459. It is true that the appellant had possession (physical) of the four defaulted notes which were charged to it by the Union Trust Company, but this fact did not constitute a reassignment of the legal title to the tractor, which remained in the assignee, the Union Trust Company, until ten days after this suit was filed.

Even though under Code (1957), Art. 13, sec. 70, the appellant acquired title to the four notes which had been charged back to it and was entitled to have them endorsed to it, the appellant did not thereby acquire legal title to the contract of conditional sale or the right to the immediate possession of the tractor. Assuming, without deciding, that it thereby acquired some equitable interest in the contract and in the tractor, any such interest falls short of such legal title as entitled it to immediate possession.

A case quite similar to this is the case of *Erwin v. Potts* (Miss.), 63 So. 2d 50. There a replevin action was brought by the conditional seller of an automobile against the conditional buyer. The conditional sales contract had been assigned to a credit corporation by the seller at the time the writ of replevin was issued. The conditional vendee had only made two payments under the conditional sales contract and the conditional vendor had paid the balance due and owing under the contract to the credit corporation. There it was held that the legal title to the automobile and the right of action to obtain possession of it remained vested in the credit corporation, until reassigned to the conditional vendor, and that it was of no consequence that the full sum had been paid to the credit corporation.

In the case of *Eureka-Security Fire and Marine Ins. Co. v. Maxwell,* 276 F. 2d 132, 137, the Fourth Circuit Court of Appeals cites with approval the *Erwin* case, in a similar factual situation.

We think the court below was correct in holding that the appellant had not established its right to immediate possession of the tractor so as to maintain its right of action in replevin and, therefore, properly granted the appellee's motion for a directed verdict.

### Second Appeal—Counterclaim

In its second appeal the appellant first contends that the trial court erred in sustaining appellee's demurrer to the appellant's plea on equitable grounds. This plea was interposed at the beginning of the trial of appellee's counterclaim, and

after the trial court had directed a verdict against it in the replevin action. In summary, this plea was that the appellant would be entitled to relief against any judgment obtained against it on equitable grounds because the conditional contract of sale was held by the Trust Company after default by appellee for the mutual benefit of the Trust Company and appellant, the Trust Company acquiescing in and consenting to the assertion of the subrogation *pro tanto* by appellant, and also because a complete reassignment if requested by the appellant, who had paid four of the notes previously in default to the Trust Company, would thereby vest appellant with all rights as a *pro tanto* subrogee.

The trial court sustained the demurrer to this plea because it ruled that the plea did not establish the necessary requirement that it show such facts that would require the judgment to be set aside in equity.

We think his ruling was correct under the facts and circumstances involved in this case. The question as to appellant's right to maintain an action in replevin had already been litigated and determined when the plea was filed. Moreover, as a defense in an action at law it could not be maintained that a court of equity would be required to set aside a judgment rendered against a defendant for wanton, wilful, or malicious trespass and conversion which constituted the appellee's alleged cause of action in the counterclaim. Under the equitable doctrine of "clean hands" it would not be in a position to seek relief from such a judgment.

The appellant was not entitled to possession of the tractor, which was clearly demonstrated by the cases cited in the first appeal. The appellant cites no case, nor have we found any, where such a doctrine has been applied, in a situation similar to that disclosed by the record in this case.

The appellant's third and final contention is that in the trial of the counterclaim the lower court (a) erred in permitting the appellee to produce evidence regarding alleged actual damages sustained by him as the result of the replevin and in allowing the jury to award the appellee any amount in excess of nominal damages on his counterclaim; (b) erred

in allowing the jury to assess, under the facts in this case, punitive damages against the appellant as justified by any evidence of wanton, wilful, or malicious action on the part of the appellant in seeking to recover the tractor under the conditional sales contract here involved; and (c) that there was no evidence to support a finding of a breach of a subsequent contract on the part of the appellant, or of any wanton, wilful, or malicious action on its part in breach of any such contract.

It was not contradicted in the evidence that at the time of filing the suit in replevin on July 17, 1959, appellant did not have the right to possession of the tractor and the trial court so instructed the jury. At that time the right of possession was in appellee and the right to repossession for a condition broken was vested in the Union Trust Company alone. That Company was not a party to the replevin proceeding and took no action of any kind to repossess the tractor.

Appellant's action was wrongful and unlawful and there is no doubt that appellee suffered actual damages during the period of time he was deprived of the possession of the tractor. The case of *Crabbs v. Koontz,* 69 Md. 59, 13 Atl. 591 relied on by appellant is not in point and is not controlling here. In that case the action was on a replevin bond, a bond of indemnity only, and title was in the conditional seller, the plaintiff in the replevin action. Moreover, there was no proof of actual damages. In this case the action was for trespass and conversion, actual damages were shown and no title or right of possession was in appellant.

The trial court's instruction authorized the jury to give punitive damages in their discretion, provided they found that there was a wanton, wilful, and malicious course of action and activity on the part of the appellant. That punitive damages are allowed in such cases and that such an instruction is proper is clearly established. The legal principles, as stated in the instruction, in almost identical terms, have been repeatedly sanctioned by the Maryland cases. *Superior Construction Co. v. Elmo,* 204 Md. 1, 15, 102 A. 2d 739; *Saund-*

ers v. *Mullinix,* 195 Md. 235, 240, 72 A. 2d 720; *Nichols v. Meyer,* 139 Md. 450, 452, 461, 115 Atl. 786; *Medairy v. McAllister,* 97 Md. 488, 489, 495, 497, 55 Atl. 461; *Sloan v. Edwards,* 61 Md. 89, 101; *Strasburger v. Barber,* 38 Md. 103, 104; *Moore v. Schultz,* 31 Md. 418, 423; *Snively v. Fahnestock,* 18 Md. 391, 395; *Schindel v. Schindel,* 12 Md. 108, 123; see also 1 Poe, *supra,* § 240; 52 Am. Jur., *Trespass,* § 10, 842, and § 57, 878; 46 Am. Jur., *Replevin,* § 139, 75.

The appellant in its brief argues that the trial court did not, but should have, defined the nature of malicious and wanton conduct. These words do not require definition. This Court has repeatedly approved such instructions containing these words without further definition. *Nichols v. Meyer, Medairy v. McAllister, Strasburger v. Barber,* all *supra.*

For cases where punitive damages for wrongful possession or repossession by holder of conditional sales contracts were allowed see 153 A.L.R. 769. In *Perlick v. Pacific Discount Corp.* (Cal.) 127 P. 2d 647, where defendant refused to accept a cashier's check in payment of full amount due, and in *Booth v. Peoples Finance Co.,* (Cal.) 12 P. 2d 50, where defendant refused full payment when offered, it was held that these actions furnished a basis for the finding of malice or oppression and the awarding of punitive damages. For other cases involving wrongful withholding or taking by creditors in which punitive damages were recovered, see 54 A.L.R. 2d 1375, 1381.

Punitive damages are properly a question for the jury in an action for wrongful conversion of personal property where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, wilful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury. 53 Am. Jur., *Trover and Conversion,* § 104, 895; 10 Am. Jur., *Chattel Mortgages,* § 175, 831.

Malice, fraud, deceit and wrongful motive are oftenest inferred from acts and circumstantial evidence. They are seldom admitted and need not be proved by direct evidence. *Geisey v. Holberg,* 185 Md. 642, 643, 45 A. 2d 735; *Stouffer v. Alford,* 114 Md. 110, 119, 78 Atl. 387; 2 Waterman, *Trespass,* § 1107.

There was ample evidence, both factual and circumstantial, from which a jury could find that appellant acted wilfully, wantonly, wrongfully, and maliciously in utter disregard of appellee's rights. It was a reasonable and proper inference that appellant became provoked with appellee's numerous requests that the defective condition of the tractor be corrected and that it determined to put a stop to the complaints by seizing the tractor and forcing the appellee to sign a release of all claims that he might have. The validity of this inference was clear in the light of appellant's insistence that appellee release all claims as a condition for appellant's acceptance of the redemption payment it had demanded of appellee and which it had stated it would accept. The appellant's action in this respect constituted an aggravation of the wrongful act of conversion. This wrongful detention of appellee's tractor following its wrongful seizure, with knowledge of the fact on the part of appellant, could be found by the jury to be wanton and malicious conduct.

We find no error in the trial court's instructions to the jury with reference to the appellee's causes of action in tort, nor as to actual or punitive damages.

With reference to the court's instructions should it find that a subsequent contract originating from a letter dated July 21, 1959, by Taylor, Comptroller, to the appellee, actually came into existence and was breached by the appellant, the court instructed the jury that it might award only nominal damages of one cent. In so ruling there was clearly no error committed which was prejudicial to the appellant.

Finding no reversible error in the trial below, the judgments must be affirmed, but without prejudice to the rights of the parties concerning the notes secured by the conditional contract of sale which were not litigated in these cases.

*Judgments affirmed, with costs.*