**In re Billy Ray EVANS, Debtor.**

**No. 93–10194–RGM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 9, 2002.

Richard G. Hall, Annandale, VA, for Debtor.

Jay V. Strong, Jr., Baltimore, MD, for Allfirst Bank f/k/a First National Bank of Maryland.

### MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

THIS CASE is before the court on the rule issued against a bank and its attorney to show cause why they should not be held in contempt of this court for their attempt to collect a discharged debt in violation of § 524 of the United States Bankruptcy Code.

The debtor leased a used 1988 Acura Legend from the bank on July 10, 1990. While the lease term contractually ran to August 10, 1993, a date during the pendency of the bankruptcy, the lease was

actually terminated pre-petition on November 7, 1992, by the debtor's default in making lease payments. The car was never returned to the bank. On November 23, 1994, more than two years after the petition was filed and ten months after the debtor received his discharge, the bank filed suit in state court seeking the return of the car. The car was not recovered and a monetary judgment was entered against the debtor in the amount of the charged-off debt. The court finds that the suit, ostensively to recover possession of the leased car or its value, was a mere subterfuge for the bank's actual intention to enforce a pre-petition debt in violation of the discharge injunction.

### Findings of Fact

#### The Lease

First National Bank of Maryland leased a used 1988 Acura Legend to Billy Ray Evans pursuant to a 37–month lease dated July 10, 1990. The monthly lease payments of $346.12 commenced on July 10, 1990. The capitalized cost of the lease was $16,950.00. The estimated wholesale cost of the car at the end of the lease was $8,002.75.[1] The certificate of title for the car issued by the Virginia Department of Motor Vehicles on August 11, 1988, listed First Maryland National Bank as the owner and lienholder. The address of the bank on the certificate of title as both owner and lienholder was 6704 Curtis Court, Glen Burnie, Maryland 21061. Def. Ex. 11 at p. 54.

### Pre-petition Collection Activity

The lease was a bad deal for the bank from the beginning. The debtor first defaulted under the lease in October, 1990, when his check for the lease payment was returned for insufficient funds. The bank opened an internal collection file on November 26, 1990. It sent the debtor a default letter on December 5, 1990, stating that he had missed both the October and November, 1990, payments, two out of the first five payments.[2] He cured these defaults, but on January 14, 1991, the bank sent another default letter stating that the December, 1990, and the January, 1991, lease payments had not been paid. Additional default letters followed. The lease was constantly in collections until the debtor filed bankruptcy on January 19, 1993. Def.Ex. 6.

The collector's notes reflect numerous attempts to contact the debtor by telephone both at home and at work prior to the filing of the bankruptcy. Numerous promises to promptly pay were made and broken. Finally, on November 20, 1992, the bank referred the matter to an outside agency to repossess the car. Three days later the debtor spoke with a collector at the bank and threatened to file a chapter 13 bankruptcy petition. The bank continued to seek repossession of the car. On December 11, 1992, the collector noted that he "told [the repossession service] to run the re-po hard over the weekend". On December 30, 1992, the debt was charged off by the bank. The amount of the charge off was $12,251.93. Def. Ex. 5 at p. 1, 3–4.[3] On February 9, 1993, the repos-

---

1. The lease provided that the debtor could purchase the car at any time during the lease period. If he purchased the car at the termination of the lease, the price of the car was a greater of the estimated wholesale cost, $8,002.75, or the wholesale value as determined from an industry standard publication.

2. The first payment was due upon signing the lease, July 10, 1990. Lease, ¶ 8, Def.Ex. 11 at p. 46. The August and September, 1990, lease payments were made.

3. The record is silent on how the bank computed the charge-off amount. Contractually, the debtor appears to have owed 12 lease payments of $346.12 each for a total of

session service closed its file because it could not find the car. It had "no leads." Def.Ex. 6 at p. 16. The bank then prepared to refer the matter to a Virginia attorney to file suit; however, before the file was physically transferred to the Virginia attorney, the bank received notice that the debtor had filed a voluntary petition in bankruptcy under chapter 7 of the Bankruptcy Code. The file was not sent to the Virginia attorney. Def. Ex. 5 at p. 2, 3; Def.Ex. 6 at p. 16. The file was internally transferred from the collectors in the bank's collection department to the head of the department who alone handled all bankruptcy matters.

### Bankruptcy Proceedings

The debtor filed bankruptcy in this court on January 19, 1993. First National Bank of Maryland was listed as a creditor on the mailing matrix and Schedule G, "Executory Contracts and Unexpired Leases," with the address of 6704 Curtis Court, Glen Burnie, Maryland.[4] This was the bank's proper address and it actually received the notice of commencement of the case on February 9, 1993, in its legal division and on February 23, 1993, in its collections department. Def. Ex. 5 at p. 2, 3. The bankruptcy was referred to Jay V. Strong, Jr.,[5] on March 1, 1993. Def.Ex. 6, p. 13. He took no action except to advise the bank by his letter of May 16, 1994, of the

entry of the discharge and the closing of his file. Def.Ex. 5 at 6.

The bankruptcy case did not proceed smoothly. The debtor failed to attend the first meeting of creditors. On March 18, 1993, the court mailed all creditors, including the bank, a notice of pending dismissal because the debtor failed to attend the first meeting. The bank received the notice of pending dismissal. Def.Ex. 5 at p. 5. The first meeting of creditors was rescheduled and the debtor attended the meeting. The bank's witness, who worked in the bank's collection department during this period, testified that the typical chapter 7 case was closed within 90 to 120 days after filing. This case did not follow that routine pattern. It was still open on August 25, 1993, when the bank checked the status of the case.[6] Def.Ex. 6, p. 17. The trustee's report of no distribution was dated December 8, 1993. Docket Entry 22. A discharge was entered on March 10, 1994, and mailed all creditors, including the bank, on the same day. Docket Entry 23. The case was closed on March 23, 1994. Docket Entry 24.

### Sale of Car to Satisfy Storage Lien

The car was sold to satisfy a storage lien in on December 10, 1993. Def.Ex. 1. The bank introduced title documentation from the Virginia Department of Motor Vehicles into evidence.[7] The documentation reveals

---

$4,153.44 plus late charges and costs. See n. 16, below. The optional purchase price of the car at the end of the lease was $8,002.75. The lease payments and the option price total $12,156.19. Apparently the bank felt that the car would never be recovered.

4. The Zip Code on Schedule G was 21060, but on the mailing matrix was 21061. Docket Entry 3. The court mailed all notices to the 21060 Zip Code. Docket Entry 4. The bank received notices mailed by the court. Def.Ex. 5 at p. 2 and 5.

5. Strong handled all of the bank's Maryland collections. He did not handle Virginia matters because he was not licensed to practice in Virginia.

6. The lease expired by its own terms on August 10, 1993. Def.Ex. 7 at p. 7; Def.Ex. 11 at p. 46.

7. These documents were requested by the bank on or about November 26, 2001. They were available in 1994 and would have revealed the same information.

that the car was owned by International Auto Sales from December 15, 1993, when it obtained title by virtue of a sale of the car to satisfy a storage lien. Va.Code (1950) § 43–32 and 43–34. The documents include an affidavit of compliance, a copy of the "Official Certified Vehicle or Transcript of Official Certified Vehicle" from the Virginia Department of Motor Vehicles dated November 9, 1993,[8] receipts for mailing certified mail addressed to the bank at both addresses on the certificate of title and a return receipt addressed to the bank at the Glen Burnie, Maryland address and signed by an agent of the bank. There is also a statement for storage costs of $20.00 a day for 64 days and an administrative fee of $150.00 for a total lien of $1,430.00. The statement was dated October 12, 1993, suggesting that the car was stored from August 19, 1993, a date shortly after the contractual expiration of the lease.

The bank also introduced into evidence title documentation from the Maryland Motor Vehicle Administration. Def. Ex. 2. This exhibit reveals that title to the car was transferred to an automobile recycler in Rockville, Maryland by virtue of a Maryland Certificate of Salvage issued on March 30, 1998. Def.Ex. 2 at p. 4. The recycler transferred the car to a third party on August 15, 2001. Def.Ex. 2 at p. 2, 3. An October 30, 2001, Carfax report, also a bank exhibit, reflects that the car was first titled in Maryland pursuant to a salvage title on May 21, 1997, and had been titled in the name of International Auto Sales from December 15, 1993 to May 21, 1997. Def.Ex. 3 at p. 4.[9]

### Post-discharge Collection Activity

The collection file was transferred internally back from the department head to the collectors on May 24, 1994. The collector's notation for this date was "try to locate the vehicle". Def.Ex. 6 at p. 17. The case was referred to a repossession service on June 27, 1994. Def.Ex. 5 at p. 7 It was again referred to a repossession service on August 14, 1994. Def.Ex. 6, p. 18. The bank knew where the debtor lived—he had moved to Maryland—but the repossession services were unable to find the car. Def.Ex. 6 at p. 18. On August 16, 1994, the bank made a report to a credit bureau. Def.Ex. 6. p. 18. On September 9, 1994, the bank again referred the file to Strong. Def.Ex. 6 at p. 18.

Strong filed suit against the debtor in the District Court for Prince Georges County, Maryland on November 23, 1994.

8. This 1993 Certificate reflects the owner of the car as First National Bank of Maryland with an address of 7903 Glenbar Court, Fairfax Station, Virginia and the lienholder also as First National Bank of Maryland but with an address of 6704 Curtis Court, Glen Burnie, Maryland.

9. The trial was originally estimated and scheduled for one day. At the end of the day all witnesses except the bank's witness had been examined. The debtor's attorney requested a ruling that the only testimony that would be received when the trial was reconvened a week hence would be the bank's witness. Without objection, the court so ruled. Apparently belatedly realizing that the title documents did not advance the bank's case, Strong telephoned International Auto Sales the following day and spoke with the owner, whose name appears in the bank collector's notes. He later sought to present the owner as an additional witness to impeach the Virginia title documents that the bank itself introduced into evidence. The motion was denied based on the trial ruling, the defendant's discovery responses and the defendant's failure to identify the witness as required by the pretrial scheduling order in the companion adversary proceeding that was tried concurrently with the rule issued in the main case. Evans v. Allfirst Bank, AP 01–1171, Docket Entry 3, ¶ 5.

Def.Ex. 11 at p. 40. The suit papers in the District Court case are a combination of pre-printed court forms and attorney-created attachments. The District Court's pre-printed complaint has multiple options that may be checked to indicate the nature of the suit. The choices at the top of the form are contract, tort, replevin and detinue. The replevin box is checked. Replevin is an action by a plaintiff entitled to immediate possession of personal property to recover the personal property in the possession of the defendant wrongfully withheld by the defendant. The suit may also include a prayer for damages for the wrongful withholding. There is space on the form for the particulars of the complaint. This was completed in an attachment prepared by Strong. It was styled "Count One: Replevin/Detinue". It recited that the bank made a loan to the debtor, that the loan was secured by a security agreement, that the loan was in default and had been accelerated, that the amount due as of December 30, 1992, was $12,126.93 with interest accruing on this amount, that the bank was entitled to the return of the collateral under § 9–503(2) of the Maryland Commercial Law Article, and that the bank was entitled to 15% attorney's fees. It stated that "Defendant(s) unjustly detain(s) the collateral, and refuse(s) to turn the property over to Plaintiff despite demand therefor." Def. Ex. 11 at p. 43. The description of the transaction as a secured loan was wrong. It was, in fact, a lease.

The pre-printed court form also contains four boxes that can be checked which state the plaintiff's requested relief. Strong checked the one that stated "return of the property and damages of $12,126.93 for its detention of an action of replevin". Def.

Ex. 11 at p. 41, 43. No date for the period of the wrongful detention of the car was stated. The amount is typewritten; the rest, pre-printed.[10] As will be discussed below, the damages shown at the ex parte hearing in the District Court were $4,825.00. The amount inserted by Strong in the court form was the amount charged off by the bank.

There is a pre-printed "Application and Affidavit in Support of Judgment" at the bottom of the form. It contains two blank lines for a brief description of the reason giving rise to the obligation. The typewritten insertion was completed by the attorney. It states "the plaintiff advanced monies to the defendant(s) as fully set forth in the accompanying documents and statements, which remain unpaid". Def. Ex. 11, p. 41. This description was also wrong.

Copies of the lease application, lease, default letter dated October 23, 1992, a postcard with the Maryland forwarding address, the Virginia Certificate of Title and an affidavit of attorney's fees, were also attached to the complaint. The attorney's fee affidavit, signed by Strong, requested attorney's fees of 15% of the amount sued. Def.Ex. 11 at p. 55.

The writ of summons which accompanied the suit papers required the debtor to appear in the District Court on December 22, 1994, to show cause why a writ of replevin should not be issued and again on February 16, 1995, for trial. The debtor filed no response and appeared at neither the show cause hearing nor the trial.

The District Court held the show cause hearing on December 22, 1994, as scheduled. The writ of replevin was signed and

---

**10.** The pre-printed text for a detinue action states "Return of the property, or its value, plus damages of $_____ for its detention in an action in detinue." This option was not selected and the blank for the monetary claim was left blank.

a bond set at $9,000.00. Def.Ex. 11 at p. 24. No bond was posted.

An ex parte hearing was held on February 16, 1995, also as scheduled in the summons. Judgment was entered against the debtor in the amount of $12,126.93. The bank's witness at the trial in this court testified that he was also the bank's witness at the ex parte hearing and that evidence was introduced at the ex parte hearing that the retail value of the car was $13,425.00 in November, 1991, and $8,600.00 in February, 1995. Consequently, the diminution in value during the time of the wrongful detention was $4,825.00. The diminution of the value of the car together with the value of the car on the date of the hearing totaled $13,425.00. This amount, he testified, was reduced to the relief requested in the complaint, $12,126.93. Def.Ex. 5, p. 9, 11, 12, 13 and Def.Ex. 15. The notice of judgment was entered on February 28, 1995, and immediately docketed in Prince George's County. Def.Ex. 11 at p. 24.

The bank made no effort to locate the car between the November 23, 1994, the date the suit was filed, and February 16, 1995, the date the ex parte hearing was held. The writ of replevin was not used.

No bond was posted. The bank has taken no action since February 16, 1995, to locate or recover the car. The file remained dormant until July, 1999.

On July 2, 1999, the bank filed interrogatories in aid of enforcement of its judgment. The debtor filed a suggestion in bankruptcy. The bank filed a motion to strike the suggestion of bankruptcy which the District Court denied. The bank appealed the decision to the Circuit Court. The debtor commenced this contempt proceeding.

### The Bank's and Counsel's Intention

The bank and its counsel assert that their intention was to recover possession of the 1988 Acura Legend. Their actions evince a different intent.[11] The bank made only a minimal effort in 1994 before it filed the replevin suit in the District Court for Maryland to determine whether the debtor actually had possession of the car. It referred the matter to repossession services twice after the bankruptcy case was closed and before suit was filed. The car could not be located.[12] The referrals, rather than confirming that the debtor had possession of the car, raised serious questions

---

11. It is not generally necessary to show the bank's or counsel's subjective intent to violate the discharge order or their subjective belief in the propriety of their conduct. It is only necessary to show that they were aware of the discharge order and that their conduct violated the discharge order. *In re Cherry*, 247 B.R. 176, 186–89 (Bankr.E.D.Va.2000) ("In a civil contempt proceeding, the state of mind with which the contemnor violated a court order is irrelevant and therefore good faith, or the absence of an intent to violate the order, is no defense.") Here, however, the bank and its counsel assert that their goal, recovery of the car, was legitimate and did not violate § 524. They further argue that if recovery of the car is permissible, then a money judgment should also be permissible if the car cannot be recovered. The court does not reach the issue of whether a money judg-

ment is allowable when a vehicle cannot be recovered, and if so, in what circumstances because the court finds that the bank and its counsel never intended to recover the vehicle in the first place.

12. If the car had been located but the repossession service thwarted in recovering the car through self-help, one would expect the matter would have been promptly referred to counsel who would have promptly filed a suit seeking replevin. The bond to execute on the writ of replevin would have been posted and the sheriff would have seized the car. The bank's asserted goal, recovery of the car, would have been accomplished. None of this happened because the car was not found to be in the debtor's possession.

about this essential issue. The effort actually made was the minimum effort necessary to assure the bank that the car could not be recovered and to give the appearance of an interest in locating the car. There were only four entries by the bank's collector relating to locating the car in the five and a half months between March 24, 1994, when the collector noted that "BANKRUPTCY DISCHARGED; TRY TO LOCATE THE VEHICLE" and September 9, 1994, when the collector noted that there had been no response from the debtor's attorney, the debtor's address had been verified and the matter had been referred to Strong. By way of comparison, in the five and a half months preceding the filing of the petition in bankruptcy, there were 33 entries. The pre-petition entries reflect numerous telephone calls to the debtor, the debtor's employer, the debtor's neighbors, and the debtor's creditors and multiple communications with the repossession service. The significant and consistent efforts to locate the car at the end of 1992 contrast markedly with the desultory efforts in 1994.

If the bank had been intent on recovering the car—and not the debt—there were many things that it could have done that it did not do. It could have sought the assistance of the bankruptcy court during the pendency of the case. The lease had been chronically delinquent by the time the bankruptcy case was filed. The lease had been terminated for non-payment of the lease payments. The last payment received by the bank was for the August 1992, payment and the lease was delinquent at least three payments when the case was filed. No payments were received while the bankruptcy was pending. The case started off poorly with the debtor missing the first meeting of creditors and remained open for an unusually long period. The contractual expiration date of the lease passed during the pendency of the

case and at that time the bank checked with the bankruptcy court to determine whether the case was closed. It was not. The bank could have attended the first meeting of creditors and asked where the car was located. The bank could have filed a motion for relief from the automatic stay. It could have used Federal Rule of Bankruptcy Procedure 2004 to examine the debtor under oath as to the car and its location. It could have sought recovery of the vehicle in this court. Any one of these actions would have vindicated its right of possession of the car, if it had been interested in possession of the car.

The bank made no effort to confirm that it had an immediate right of possession to the car and was a proper party to bring the replevin action before it filed suit in the District Court. It could have obtained a title transcript from the Virginia Department of Motor Vehicles as International Auto Sales did on November 9, 1993, and as the bank did on November 26, 2001. While this is not a necessary prerequisite to filing a replevin action and is more appropriate to a situation where the vehicle is collateral for a loan and could be sold subject to the lien rather than the where the vehicle is the subject of a lease, the car had been missing for at least 18 months even though the bank knew where the debtor lived. The lease had been terminated for default more than two years prior to the filing of the suit and the contractual termination date of the lease was more than one year prior to the filing of the suit. The car was aging and presumably required at least routine maintenance and inspections. It was unclear whether the debtor, who had no right to use the car and had obvious financial difficulties, would maintain the car or have it inspected. The record is devoid of any evidence of whether the car was registered, had current license tags or was

insured, all matters of concern to the bank. A title transcript would have revealed a change of ownership or whether the car had been destroyed in an accident and scrapped. It would have been an inexpensive and quick source of information. In many cases it would have been a dead end as were so many of the bank's other attempts to locate the vehicle. In this case, it would have resolved the matter. Such an inquiry was one method that would have shown that the debtor was not a proper party defendant because he did not have possession of the car and that the bank was not a proper party plaintiff because it did not have an immediate right of possession.

The manner in which the suit papers were prepared also belie the bank's stated motive. In replevin, the plaintiff is only entitled to possession of the property and damages for its unlawful detainer. In detinue, however, a party can be held liable for the value of the property (but not possession) and the loss of value during the period that it was unlawfully detained. A replevin suit can be amended to a detinue suit if recovery of the property is unsuccessful. This suit appears to have been brought with that intention.

Moreover, the papers request judgment for precisely the amount that was charged off, an amount consistent with a debt due, rather than a true replevin or detinue action. In a true replevin or detinue action, in both a lease and a loan situation, the amount sued for is independent of the amount due to the bank. Rather than being measured by the outstanding obligation, it is measured by the value of the car, whether leased or collateral. If the car is worth less than the outstanding debt, the damages would be less than the outstanding debt. The bank's remedy, possession of the car or its value, would be limited to the value of the car. Conversely, if the car is worth more than the debt, the bank should not be limited to the debt in a lease situation.[13] Where the bank is seeking to recover a leased car as opposed to a car secured by a lien, its loss is the value of the car, not the amount of the debt.[14] The text of the complaint treats the transaction as a loan. This is inconsistent with the lease, but is consistent with an attempt to collect a debt.

The request for attorney's fees in the attachments is also an indication of the bank's and its attorney's intention. Notwithstanding a one-page affidavit supporting the request for attorney's fees in the District Court, Strong now argues that the bank is not entitled to attorney's fees. A suit in replevin is not a suit on the contract which provides for attorney's fees and, therefore, the bank is not entitled to attorney's fees. He asserts that the attorney's fees affidavit and the request for attorney's fees were an oversight on the part of his office. He testified that he frequently signs suit papers in blank and leaves them to his secretarial staff to complete. He believes that is where the error occurred

13. In a secured loan situation, the maximum damages should be the outstanding debt. If the car were repossessed and sold at a price greater than the outstanding debt, the bank would be paid the outstanding debt (plus costs) and the debtor would be paid the surplus. The bank's interest is the amount of the debt, not the value of the car.

14. Throughout this proceeding, the bank has proceeded without objection by the debtor on the assumption that this is a lease transaction and not a disguised sale. While the lease does provide the debtor with an option to purchase, it is not an option that he must exercise and the exercise price is the then fair market value of the car. In these circumstances, although the court was not called upon to decide the issue, it appears that the lease was a true lease and not a disguised secured loan.

in this instance. He now disavows any entitlement to attorney's fees. Nonetheless, the attorney's fees were requested in the complaint and the reason for the complaint as explained in the typewritten section was for a debt due, not a lease transaction.

The period of the wrongful detention of the car was not set out in the District Court pleadings. The bank's witness testified in this court that the amount claimed for wrongful withholding of the car ran from November, 1991, through February, 1995. Def.Ex. 5 at p. 9, 11, Supplement.[15] The car was valued at the retail value as of November 1991 and February 1995 according to the N.A.D.A. Official Used Car Guide, Eastern Edition, for those months. The difference in value was the damages from the wrongful detention. A default letter dated October 23, 1992, was filed with the complaint in the District Court. Def.Ex. 11 at p. 50; Def.Ex. 9 at p. 24–27. It states that the debtor was in default and that unless the default was cured within 15 days, the car would be repossessed. The cure period expired on November 7, 1992, without the lease payments having been made.[16] Thereafter, the debtor did not

have the right to possess the car. The damages should, therefore, have been measured from November 1992, not November 1991.[17] There is no direct evidence of the value of the car in November 1992, but assuming that the depreciation is linear with time, the value would have been $11,940. The damages for the wrongful detention would have been $3,340. This together with the value of the car in February 1995, would have resulted in a judgment of $11,940, an amount less than the charge-off amount and less than the debt due to the bank.

In any event, under any theory, damages for wrongful withholding of the car for the pre-petition period were discharged in bankruptcy. Again, assuming that the depreciation is linear with time, the post-petition damages would have been $3,093 for a total judgment of $11,693. This is, again, less than the debt due to the bank. The bank and its attorney clearly erred in seeking recovery of this pre-petition claim against the debtor. Not only was this a clear violation of the discharge stay, but it also evidences the true intention of the bank and counsel. They wanted a judgment in the amount of the discharged debt,

15. The supplement to Defendant's Exhibit 5 consists of Strong's letter to debtor's counsel dated May 22, 2002, the cover of the February 1995 N.A.D.A. Official Used Car Guide for Domestic Cars, Imported Cars and Trucks, Eastern Edition and the page showing the retail value of a 1988 Acura Legend, 4–door sedan at $8,600.00.

16. The October 23, 1992, default letter is the latest default letter submitted by the bank. Def.Ex. 9. Since the prior default letter, dated August 19, 1992, included defaults for September and August, 1992, months not included in the October 23, 1992, letter, those defaults must have been cured and the debtor must have continued to have been entitled to possession of the car. The October 23, 1992, letter is consistent with the collector's note of December 7, 1992, that states the collector told the debtor that he "can't ride around in

our car for 3 months & not expect the Bank to do nothing." Def.Ex. 6 at p. 12. Three months' delinquency on December 7, 1992, would have been the September 10, 1992, October 10, 1992, and November 10, 1992, payments. The December payment was not yet due. The October 23, 1992, letter included the September and October payments. The November payment had not yet become due.

17. The attachment to the complaint recites that the note was accelerated and gave the balance as of December 30, 1992. The date of acceleration was not given. This suit was, of course, not a suit on a note, but a suit to recover the car and the acceleration date, if any, was irrelevant. However, it would suggest the date for the demand for return of the car was earlier than December 30, 1992, and is consistent with the November 7, 1992, date.

not a judgment for the damages and the value of the car.

The failure of the bank to make any effort to recover the car from the time the writ of replevin was authorized through the date of the hearing in this case—a period in excess of seven years—also evinces of the bank's actual intent to recover on the discharged debt. It had the ability to promptly summons the debtor to the District Court to answer interrogatories before the trial if they needed him to locate the car. Counsel did not pursue this avenue. Nor did he pursue this avenue after obtaining the judgment. After obtaining the judgment neither the bank nor counsel sought to locate the car. Counsel merely docketed the judgment among the land records so that it would create a lien on all of the debtor's real property.[18]

The bank's and counsel's actions and inactions belie the bank's asserted intention of recovering the car. The bank's action, after its 1994 search for the car, in referring the matter to Strong to file a suit for replevin when it knew that the car was missing and probably not in the debtor's possession was a subterfuge and was calculated to recover the discharged debt, not the car.

### Conclusions of Law

 The essential element of a suit for replevin is possession. The plaintiff must be entitled to immediate possession of the property sought and the defendant must have possession of it or a writ of replevin will not issue. *McClung–Logan Equipment Company, Inc. v. Thomas,* 226 Md. 136, 172 A.2d 494 (1961). In *McClung,* Thomas purchased a tractor from McClung under a conditional sales contract. It did not function properly. McClung failed to honor its warranty and Thomas withheld his monthly payments. McClung obtained a writ of replevin issued without a hearing or notice to Thomas and seized the tractor.[19] McClung, however, had sold the notes and conditional contract of sale to a bank long before the issuance of the writ of replevin. The Court of Appeals stated:

> It is well settled that in order to maintain an action of replevin the plaintiff must prove his right to immediate possession at the time the writ issues. *Koch v. Mack Intern. Motor Truck Corp.,* 201 Md. 562, 95 A.2d 105; *Dermer v. Faunce,* 187 Md. 610, 612, 51 A.2d 76; 46 Am.Jur., Replevin, § 25, 16; 77 C.J.S. Replevin § 184, p. 137; 1 Poe, Pleading and Practice (Tiffany Ed.), § 251, wherein it is stated in part ' * * * for unless at the time of issuing the writ the plaintiff has the right of possession, he cannot succeed, whatever may be his title in other respects.' The gist of the action is the plaintiff's right to possession and he must sustain the burden of proof. 1 Poe, supra, § 253.

*Id.* at 144, 172 A.2d 494. "And until the conditional sales contract is reassigned to [McClung] he is not entitled to the possession of the property." *Id.* at 144, 172 A.2d 494. Consequently, McClung "had not established its right to immediate possession

---

18. Counsel was to be paid a flat $400 fee if the car was recovered but 30% of all sums collected if the car was not recovered.

19. Prior to 1973, writs of replevin in Maryland could be issued pre-judgment without notice to the defendant or a hearing. The Maryland rules changed in 1973 following the United States Supreme Court's decision in

*Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). *See Wallander v. Barnes,* 341 Md. 553, 561, 671 A.2d 962, 966 (1996). "Modern replevin in Maryland is a pre-judgment, but post-probable cause determination, seizure." *Wallander,* 341 Md. at 572, 671 A.2d at 971.

of the tractor so as to maintain its right of action in replevin." *Id.* at 145, 172 A.2d 494. This was the law of Maryland in 1993 and remains the law of Maryland today. *Wallander*, 341 Md. at 561–72, 671 A.2d at 966–971; Md.Rule 12–601 and 12–602.[20]

The bank was not entitled to immediate possession of the car when it sued the debtor on November 23, 1994, because the car had been sold to satisfy a storage lien. The bank knew or should have known this when it filed suit in the Maryland District Court. The bank received notice of the intended sale of the car to satisfy a storage lien in November 1993. Def.Ex. 1 at p. 8–12. Section 43–34 of the Code of Virginia (1950) required in 1993 and still requires that notice of the time and place of the proposed sale be mailed by certified mail to both the owner and the lienholder of record at their addresses on the certificate of title. The documentary evidence from the Virginia Department of Motor Vehicles contains a transcript of the car's title dated November 9, 1993, which was issued to International Auto Sales, the company that claimed the storage lien. The transcript contains the name and address of the owner and the lienholder—both First National Bank of Maryland. The address for the bank as owner was in Virginia.[21] The address for the bank as lienholder was the Glen Burnie, Maryland address. Notice of the intended sale was mailed to the bank at both addresses by certified mail. There

is a receipt for mailing certified mail for each address. Def.Ex. 7 at p. 8, 11. Both are postmarked November 13, 1993. Def. Ex. 7 at p. 13; Def.Ex. 11 at p. 54. The envelope addressed to the bank at its Virginia address is postmarked November 13, 1993. It was returned by the postal service. Def.Ex. 7 at p. 9–10. There is a return receipt for the Glen Burnie, Maryland letter which was signed by someone at the bank. Def.Ex. 7 at p. 12.

A copy of the notice of sale is also in evidence. Def.Ex. 1 at p. 14. It stated that the auction would be conducted on December 10, 1993, at 9:00 a.m. and identified the place of the auction. It identified the car as a 1988 Acura and gave its vehicle identification number. Def.Ex. 7 at p. 14. There is an "Affidavit of Compliance" that recites compliance with § 43–34. Def.Ex. 7 at p. 16. The documents themselves evince compliance with § 43–34. The Virginia Department of Motor Vehicles issued a new certificate of title to International Auto Sales on December 15, 1993. Def.Ex. 1 at p. 1.

The bank's witness testified that notices of sale to satisfy mechanics liens and storage liens are important to the bank. Sales for mechanic's and storage liens may impair the bank's title or security interest. In Virginia, storage liens have a limited priority over security interests and divest the owner of its title to the car. Va.Code

---

**20.** Maryland Rule 12–601 provides in part:

(a) Action in District Court. A person claiming the right to immediate possession of personal property may file an action under this Rule for possession before judgment. The action shall be filed in the District Court.

(b) Defendant. The action shall be brought against the person who has possession of the property at the time the complaint is filed. A person who obtains possession after the complaint is filed shall be joined as a defendant.

**21.** The record is silent as to why the transcript of the car's title has a different address which is an address of a bank office in Virginia for the bank as owner than appears on the certificate of title issued on August 11, 1988. The Virginia address is in addition to the Maryland address on the certificate of title which was also the bank's address as lienholder on both the 1988 certificate of title and the 1993 transcript.

(1950) § 43–32. Because auctions tend to result in below-market prices, a secured lender may be injured notwithstanding the limited priority granted to the mechanic or storage facility. The bank is properly concerned with such sales. The bank's witness testified that if a notice of an impending sale is received by the bank, the bank invariably sends a representative to inspect the affected vehicle to make sure it was worth preserving and if it is, to pay the lien on the spot. Notices are so important that if the vehicle or account cannot be identified from the correspondence received, it is routed to the bank's research department which seeks to identify the vehicle or account involved.

The bank's witness testified that the notice of sale was not in the bank's collection file. He speculated that the bank's research department could not identify the notice of sale and, therefore, that the bank did not know of the sale either before or after the sale. Strong also testified that the notice was not in his file. Since the bank forwarded all of its Maryland collections to him, he concluded that the notice was not received by the bank. This, however, was a Virginia matter. The bank did not refer Virginia matters to him. While the notice of sale is not now in the bank's collection file, the conclusion that it was not received by the bank or could not be identified by the bank is not credible.

There was no testimony as to why the notice of sale to satisfy the storage lien, if it could not be related to a specific loan or lease upon receipt, could not have been readily identified by the research department, particularly given the bank's concern to identify correspondence through its research department and the importance of involuntary sales of bank property or collateral. There was sufficient information in the notice itself to identify the car or the lease to which it applied. The vehicle identification number was included in the notice. If this was not sufficient, the time and place of the auction was included. The bank could have telephoned the party giving the notice or gone to the location identified in the notice. The bank could have asked for the name of the person who left the car or ordered work to be performed on it. There should have been no problem for the bank to have ascertained from the information provided or that was readily available to it what vehicle was involved and the account to which it applied.

Even if the bank had been entitled to immediate possession of the car it must also have proved in the replevin suit that the defendant was in possession of the car. *Mylander v. Chesapeake Bank of Baltimore,* 162 Md. 255, 159 A. 770 (Md.App. 1932) ("detinue . . . like replevin, is maintainable only against one who has the goods in his possession"). *See also* current Md.Rule 12–601(b). The debtor did not have possession of the car. It had been sold in 1993 to satisfy a storage lien. The bank was on notice that there was a question as to whether the debtor actually had the car. The lease had been in default since September 10, 1992, and had expired on August 10, 1993. Def.Ex. 11 at p. 43, 50; Def.Ex. 5 at p. 1. The car had not been seen for at least 18 months. In 1994, the bank had the debtor's current home address and gave that address to the repossession service.[22] Def.Ex. 8 at p. 7. If the debtor were driving the car or it were

---

**22.** The collector's note for August 16, 1994, was "SENT PC [postcard] TO BOTH ADDRESSES SEE WHAT'S UP." Def.Ex. 6 at p. 18. The postcard is Defendant's Exhibit 11 at p. 53. It was addressed to the debtor's Virginia address and is postmarked August 16 or 18, 1994. It was returned with a new address, the address at which the debtor was served with the summons. Def.Ex. 11 at p. 40–41.

being driven by someone in his household, it would normally be parked at the debtor's home overnight. It is a fair inference that the repossession service went to the debtor's home and looked for the car. This is what was explicitly done in 1992. Def.Ex. 6 at p. 13. The repossession service reported at that time that it could not repossess the car. Def.Ex. 6 at p. 18. In 1994, the bank did nothing to resolve this question.

In short, the bank could not make out two essential elements of a replevin action—its right of immediate possession and the debtor's possession of the car—and knew or should have known that it could not prevail. Nonetheless, it instituted the replevin action.

The discharge protections of a debtor were somewhat limited under the Bankruptcy Act of 1898. Creditors were not originally enjoined from proceeding against bankrupts on a discharged debt.[23] They could, and did, file suit on discharged debts. The burden was on bankrupts to appear in the state court, file a plea in bar or a plea of bankruptcy, and protect themselves. The defense of bankruptcy was an affirmative defense that had to be raised by the debtor. A debtor failing to raise it waived the benefit of the discharge. This was of such significant concern to Congress in 1978, that it enacted § 524, the discharge stay, and specifically enjoined creditors from pursuing discharged debts. *See* 4 Collier on Bankruptcy, ¶ 524.LH[1] (15th ed.2002). The ruse in this case is nothing more than a reversion to the dis-

credited creditor conduct permitted under that Bankruptcy Act and rejected by Congress in the Bankruptcy Code. *Braun v. Champion Credit Union (In re Braun),* 141 B.R. 133 (Bankr.N.D.Ohio 1992) *aff'd* 152 B.R. 466 (N.D.Ohio 1993).

The bank argues that a replevin action is proper. It argues that a debtor's discharge does not entitle him to keep a car that he does not own. This is true. *See Myers v. Beneficial Finance Company of Virginia (In re Myers),* 18 B.R. 362 (Bankr.E.D.Va.1982)(Bonney, J). A debtor has an obligation to return the car at the end of a lease. The discharge does not discharge this obligation. He may, in fact, be sued for possession of a car if he fails to timely return it and if he is in possession of it. *See Burgin v. Society Bank & Trust (In re Burgin),* 1991 WL 378166, *2. That, however, does not permit the bank to cloak its efforts to recover on the discharged debt in the false rubric of seeking the recovery of its leased car.[24]

### Remedy

The debtor should be placed in the same position as if the bank and its counsel had not violated the discharge stay. The debtor requested substantial damages in this case. He asked for lost wages for missing 15 days of work. The debtor's testimony was vague on this matter. The bank's own exhibits reflect that the debtor appeared twice in the District Court.[25] He also appeared two days in this court. Without any other supporting evidence,

---

**23.** *See* 11 U.S.C. § 14(f)(2), Bankruptcy Act of 1898, the predecessor of 11 U.S.C. § 524(a).

**24.** Some courts have held that while the creditor has the right to seek recovery of the property by way of replevin, the creditor may not seek an in personam judgment on any theory, including conversion. *Griffin v. Sears, Roebuck and Company (In re Griffin),* 204 B.R. 308 (Bankr.D.R.I.1997); *In re Martin,*

157 B.R. 268 (Bankr.W.D.Va.1993). It is unnecessary to address that issue in this case.

**25.** The debtor appeared in the District Court on September 21, 2000, and November 9, 2000. The November 9, 2000, docket entry states that the defendant was to retain an attorney. Def.Ex. 11 at p. 26–27.

the most that the debtor has shown is four days of lost work. The lost wages are $1,000.00. The debtor also asserts that he lost an opportunity for a much better job because of the adverse credit report. The debtor, however, has been unable to show any proximate cause. There was at least one other derogatory comment on his credit report. More importantly, he has shown neither that he would have obtained the job nor the salary that he would have been paid. The only testimony was the debtor's as to what he thought or hoped he would be paid, if hired. This is not sufficient to support his claim of damages. The debtor also claims pain and suffering but the evidence does not support the claim or permit the court to quantify such damages.

■ The debtor incurred attorney's fees in this court and in the District Court. The debtor seeks recovery of attorney's fees of $41,117.51 and expenses of $1,158.99. The debtor was represented by two attorneys in this court both of whom were present throughout the trial. This case did not require two attorneys at trial. The attorney's time records reflect a division of work in preparing the case. Whether performed by one attorney or two, much of that work would still have been required. The hourly rates are reasonable and within the prevailing market rates for attorneys providing ·similar services in this court. However, the total hours expended is somewhat more than appropriate in this case because of the use of two attorneys. The court must, therefore, determine the reasonable amount of time required in this case. After having reviewed the time records, the pleadings and the proceedings, the court determines that a reasonable attorney's fee in this court and the District Court is $24,954.00.[26]

■ Punitive damages were also requested. While they go further than putting the debtor in the position in which he would have been had the bank and counsel not violated § 524, they are appropriate to vindicate the orders of this court and act as a deterrent to similar conduct. *See In re Cherry*, 247 B.R. 176, 186–90 (Bankr. E.D.Va.2000)(St.John, J.); *In re Brantley*, 116 B.R. 443 (Bankr.D.Md.1990). Here the conduct was egregious and in clear disregard of the provisions of the Bankruptcy Code. What may appear on the surface to have been proper was, at bottom, an intentional effort to circumvent the discharge order entered by this court by falsely cloaking efforts to collect a prepetition debt in the legitimacy of a suit in replevin. Unlike *Cherry*, the bank is an institutional creditor which has frequently confronted this scenario and is likely to face it again. While it has not been shown that the bank and counsel have engaged in similar conduct in any other case, punitive damages are not restricted to cases involving multiple violations of the discharge injunction. A mild warning to counsel and the bank is in order to deter future conduct intended to circumvent the bankruptcy discharge injunction. Punitive damages

---

26. The debtor also was represented by counsel in the District Court. The time records submitted enable the court to determine the reasonableness of the fees incurred in that proceeding. The amount awarded is comprised of $4,954.00 for the services of Shechtel & Sorrell in the Maryland litigation and $20,000.00 for the services of both Richard G. Hall and Tommy Andrews, Jr., in this court. Because both Mr. Hall and Mr. Andrews participated in the trial, the court will not at this time apportion their portion of the fee awarded between them. If they are unable to do so, they may bring the matter back before the court so that evidence may be taken as to their relative participation in the preparation and presentation of the case and any other factors that may be appropriate to the determination.

in the amount of $2,500 should be sufficient in deliver this warning.

■ The monetary awards will be joint and several against both the bank and its counsel. Counsel was the architect. He controlled the District Court suit, the manner in which it was pled, presented and prosecuted. He knew that the Bankruptcy Code prohibited the collection of the pre-petition debt and concocted the ruse to evade the prohibition.

The court will further order both defendants to vacate the judgment entered in the District Court of Maryland and dismiss that case with prejudice. The bank will also withdraw any adverse or derogatory credit report that it submitted to any credit bureau and that presently appears on any credit report.

### Conclusion

While a party has a right to recover possession of a leased car from a debtor who has received a discharge in bankruptcy when the lease is terminated, it may not use this right as a subterfuge to collect the underlying debt. In this case, the bank and the attorney intended to collect the discharged debt, not recover the car. They thereby violated § 524 of the United States Bankruptcy Code. The debtor will be awarded of damages of $1,000.00, punitive damages in the amount of $2,500.00, attorney's fees in the amount of $24,954.00 and expenses in the amount of $1,158.99.